STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES
HOGAN, PLAINTIFF IN ERROR.

Submitted May term, 1934—Decided February 1, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the plaintiff in error, *Julius J. Seiden.*

For the defendant in error, *Daniel O'Regan,* prosecutor of
the pleas.

PER CURIAM.

Plaintiff in error was convicted of robbery. He sued out
a writ of error, and the entire record of the proceedings had
upon the trial was, pursuant to the authority conferred by
section 136 of the Criminal Procedure act (2 *Comp. Stat.,*
*p.* 1863), returned with the bill of exceptions. The grounds
now urged for reversal, raised both by an assignment of
errors and a specification of causes therefor under section
137 of the act referred to (2 *Comp. Stat., p.* 1866) are: (1)
the verdict is contrary to and against the weight of the evi-
dence, and (2) the trial judge committed prejudicial error
in overruling certain questions propounded to the state's
witnesses on cross-examination.

These are the circumstances: The only witnesses whose
testimony tended to inculpate plaintiff in error were two self-
confessed accomplices, Gourley and Wilson, and this was
their story: Hogan, a lifelong resident of the community in
which the robbery was perpetrated, and who had never been

convicted of crime, suggested to the mentioned accomplices and another, one Brand, who took no part in the trial, either as a defendant or as a witness, that they "take" a truck of the Lorrillard Tobacco Company, containing a cargo of tobacco, after its departure from a plant or warehouse of the tobacco company maintained in the neighborhood in which plaintiff in error and Gourley and Wilson resided. Gourley was a virtual stranger to plaintiff in error. They had met for the first time a week or two before this alleged proposal was made. Hogan, so the confessed accomplices testified, made the inquiries requisite to determine the time of the holdup; and it was agreed that, in the execution of the plan, Hogan would suddenly drive his automobile in front of the truck, shortly after its departure from the plant, and thus compel the driver to reduce its speed, when Gourley and Wilson would ascend to the driver's seat, and, at the point of a revolver, take control thereof. This was the course pursued, so Gourley and Wilson testified. Unquestionably, Gourley and Wilson seized the truck shortly after its departure from the Lorillard plant. They testified that, upon reaching the driver's cabin, they took control from the truck driver and his helper at the point of a revolver, and that, after having driven for some distance through busy thoroughfares of Jersey City, Wilson and the driver and helper, the latter two making no outcry, dropped from the truck, leaving Gourley in possession. The reason for this is not clear, although there is evidence tending to show that the police were then in pursuit, and that Wilson deserted the truck to avoid capture. Some distance beyond this point the pursuing police caught up with the truck, and took Gourley into custody. The latter promptly made a statement, admitting that he and Wilson conducted the holdup, but making no mention of Hogan. Wilson, upon his arrest, made a like admission without mentioning Hogan. Sometime later, Gourley made a second statement to the police authorities, and then for the first time told a story that involved Hogan. Wilson did not make mention of Hogan until the morning of the day of the trial. Neither the truck driver nor his helper was called as a witness and the failure is not excused.

Hogan testified in his own behalf. While he vigorously denied all participation in the preparation for and perpetration of the crime, his testimony, in some of its phases, particularly as to his acquaintance with Gourley and Wilson, is not altogether convincing. But, inasmuch as a reversal is required on the second ground, it will be unnecessary to determine the first, and therefore an appraisal and weighing of the evidence will serve no useful purpose.

The questions propounded to Gourley on cross-examination were clearly designed to show the facts and circumstances attending his inculpation of the plaintiff in error, for the obvious purpose of enabling the jury to determine whether he was actuated by self-interest. He was asked, for instance, if, at the time of his involvement of plaintiff in error in this criminal enterprise, he was about to be sentenced on a plea of guilty. This and questions of like character, designed to show partiality and bias inspired by motives of self-protection, were overruled. Exceptions were duly taken.

We find prejudicial error in these rulings. A jury may convict a prisoner upon the testimony of an accomplice alone, if, in its judgment, such testimony is entirely credible and worthy of belief. *State* v. *Fearce,* 113 *N. J. L.* 155; 172 *Atl. Rep.* 575; *State* v. *Bove,* 98 *N. J. L.* 350; 116 *Atl. Rep.* 766; *affirmed,* 98 *N. J. L.* 576; 119 *Atl. Rep.* 926; *State* v. *Bossone,* 88 *N. J. L.* 45; 95 *Atl. Rep.* 969; *affirmed,* 89 *N. J. L.* 724; 99 *Atl. Rep.* 310; *State* v. *Lieberman,* 80 *N. J. L.* 506; 79 *Atl. Rep.* 331; *State* v. *Hyer,* 39 *N. J. L.* 598; *State* v. *Bien,* 95 *Id.* 474; 113 *Atl. Rep.* 248; *State* v. *Simon,* 71 *N. J. L.* 142; 58 *Atl. Rep.* 107; *affirmed,* 59 *Id.* 1118. But such testimony must, for obvious reasons, be closely scrutinized. The accomplices, tainted as they are with confessed criminality, are often influenced in their testimony by the strong motive of hope of favor or pardon. Therefore, it is incumbent upon the courts to "look carefully into the secret motives that might actuate bad minds to draw in and victimize the innocent." *State* v. *Hyer, supra.* See, also, *State* v. *Bien, supra.* In these circumstances there was all the more reason for a liberal application of the general rule that questions directed toward eliciting the interest of the

witness are proper. In *State* v. *Black,* 97 *N. J. L.* 361; 118 *Atl. Rep.* 103, this court applied the principle. The state called to the witness stand two alleged co-conspirators. brothers, who gave testimony that, if believed, - established the truth of the charge contained in the indictment. On the cross-examination of one, who followed his brother to the witness stand, counsel for the accused sought to obtain an admission that he and his brother had "consulted together about appearing and giving testimony in the case," but the questions directed to that end were overruled. In an opinion directing a reversal, Chief Justice Gummere said: "The fact that these two co-defendants had turned 'state's evidence' naturally affected injuriously the credit to be given to their testimony; for it was suggestive, at least, of a bargain between them and the state authorities with relation to the punishment which would be inflicted upon them in case their testimony aided in bringing about Black's conviction. In this situation, the fact that before these two witnesses were called they had consulted with relation to the testimony to be given by them—if such was the fact—coupled with the similarity of their testimony actually given, tended to further discredit them as witnesses by giving some color, at least, to the conclusion that Black might have been the subject of a 'frame up' engineered by these two brothers. As a general rule any fact that bears against the credibility of a witness is relevant to the issue being tried; and the party against whom the witness is called has a right to have that fact laid before the jury in order to aid them in determining what credit should be given to the person testifying." Assuming, without deciding, that, as held in some jurisdictions, the scope and extent of a cross-examination designed to show the interest of the witnesses is within the sound discretion of the trial judge, plaintiff in error, by this curtailment of the cross-examination of the witness in question, suffered manifest wrong and injury, within the intendment of section 136 of the Criminal Procedure act, and a reversal is therefore required, to the end that a new trial be had.

Judgment reversed, and a *venire de novo* awarded.