112 N.J. Super. 6 (1970)
270 A.2d 284
STATE OF NEW JERSEY, RESPONDENT,
v.
IRVING J. ZWILLMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1970.
Decided October 19, 1970.
*10 Before Judges KILKENNY, HALPERN and LANE.
Mr. Justin P. Walder argued the cause for appellant (Messrs. Schapira, Steiner & Walder, attorneys; Mr. Jeffrey Barton Cahn, on the brief; Mr. Walder, of counsel).
Mr. David S. Baime, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. Baime, Mr. Franklin M. Sachs, Assistant Prosecutors, and Mr. John De Cicco, Legal Assistant, on the brief).
The opinion of the court was delivered by LANE, J.A.D.
Defendant, an attorney at law of the State of New Jersey, was convicted on three counts of obtaining money by false pretenses from the Maryland Casualty Company in violation of N.J.S.A. 2A:111-1. He was sentenced to 18 months in the Essex County Penitentiary, with six months to be in custody and the balance on probation. The judgment of conviction also ordered defendant to pay fines totaling $6,000 and costs of prosecution of $4,800.
*11 The basis of the prosecution was that the defendant, acting with Anthony D. Cortese, a claims adjuster and later claims supervisor of the Maryland Casualty Company, submitted claims on behalf of three fictitious persons. The State's case was based almost entirely upon Cortese's testimony. It was contended that the operation was that Cortese would give the defendant a location insured by Maryland Casualty Company. Defendant would then write a letter to the insured on behalf of an alleged client. The claim letter would come to Cortese who would order a physical examination and then settle the claim with the defendant. The defendant submitted reports from a doctor who allegedly treated the claimants and releases allegedly signed by the claimants. The settlement drafts were allegedly endorsed by the claimants and then cashed by defendant acting through another person. Cortese testified that he received 10% of the settlement drafts.

I
At the oral argument defendant raised the point that there was no evidence to support the prosecution except the testimony of Cortese, a co-conspirator. He argued, therefore, that since the conspiracy was not shown by proof other than from Cortese, the testimony of Cortese out of his presence was not admissible against him, relying upon statements by the court in State v. Boiardo, 111 N.J. Super. 219 (App. Div. 1970), certif. den. 57 N.J. 130 (1970). The rule as stated in Boiardo is that declarations of a co-conspirator made outside the presence of a defendant are not admissible against the defendant unless there has been sufficient independent proof to show the conspiracy. Defendant misconceives the nature of the testimony given by Cortese. In support of the indictment the State did not rely upon declarations by Cortese made out of the presence of the defendant; rather, Cortese's testimony was direct evidence of actions and statements of the defendant himself. These statements were part of the continuing transactions in which *12 both participated in obtaining monies under false pretenses as charged by the State. State v. Jackson, 43 N.J. 148, 155-156 (1964). An accused may be convicted solely on the uncorroborated testimony of an accomplice. State v. Begyn, 34 N.J. 35, 54 (1961). There is no substance in this point.

II
The denial of a motion for a judgment of acquittal at the end of the State's case and of a motion for a judgment of acquittal notwithstanding the verdict of the jury is alleged to have been error.
The basis of this argument is that since Cortese had authority to settle the claims made by the defendant on behalf of the three alleged injured persons and since there was no reliance by Cortese upon anything done or said by the defendant, there could be no reliance by Maryland Casualty Company and the defendant could not be found guilty of obtaining money by false pretenses in violation of N.J.S.A. 2A:111-1. The argument urged that if, in fact, any crime was committed, it was embezzlement by Cortese.
Reliance by the aggrieved party, Maryland Casualty Company, is a necessary element of the offense charged. The extent of reliance, however, need not be great. A single misrepresentation which induces the defrauded party to part with his money is sufficient to support an indictment for a violation of N.J.S.A. 2A:111-1. State v. Allen, 53 N.J. 250 (1969); State v. Lamoreaux, 13 N.J. Super. 99 (App. Div. 1951).
It may well be that Cortese was guilty of embezzlement from his employer but that does not prevent the State from charging the defendant with violations of N.J.S.A. 2A:111-1. In conspiring with the defendant Cortese was not furthering the interests of his employer. He connived with the defendant in submitting false information to the insurance company on the basis of which the defendant received monies from the insurance company. Both defendant *13 and Cortese could have been found guilty of obtaining money under false pretenses or could have been indicted and found guilty of embezzlement (Zwillman as an aider and abettor) under the proofs adduced by the State. Cf. State v. Drake, 79 N.J. Super. 458 (App. Div. 1963); State v. Urie, 92 Idaho 71, 437 P.2d 24 (Sup. Ct. 1968); People v. Zimmer, 23 Cal. App.2d 581, 73 P.2d 923 (Ct. App. 1937).

III
Defendant objected to the court's charge on the ground that the jury was not sufficiently instructed as to the necessity and requisites of a finding of reliance by the insurance company upon false representations made by the defendant.
The jury was specifically instructed that it was necessary "that the State show in each case that the defendant did deceive the Maryland Casualty Company which must have believed and relied on the defendant's representations to be true."
We have reviewed the entire charge and find that it adequately instructed the jury of the necessity of a finding of reliance by the Maryland Casualty Company upon a false representation submitted by the defendant in each of the three charges.

IV
The court permitted cross-examination of the defendant as to his compliance or lack of compliance with the rules of court requiring attorneys to keep trustee accounts and certain records. R. 1:21-6, formerly R.R. 1:12-5. The evidence showed that the defendant did not deposit the settlement drafts in any trustee account. Rather the drafts were cashed and the proceeds allegedly disbursed to the claimants and the defendant. No receipt was taken from the claimants by the defendant. The evidence was admitted to show the intent of the defendant to defraud. In the charge to the jury the court made it very clear that if the jury found a violation *14 by the defendant, such finding should be considered "as a circumstance going to establish the defendant's intent to violate the law of either false pretense and/or conspiracy if, in fact, you find that such deviations have been proven beyond a reasonable doubt."
The evidence was properly admitted. State v. Then, 118 N.J.L. 31 (Sup. Ct. 1937), aff'd o.b. 119 N.J.L. 429 (E. & A. 1938); Cf. State v. Fisher, 96 N.J.L. 5 (Sup. Ct. 1921). We find no error.

V
After the defendant had taken the stand he was served with a subpoena duces tecum to produce in court certain of his files. Defendant argues that his Fourth and Fifth Amendment rights were violated by the refusal of the trial court to quash the subpoena.
Evidence Rule 25(d) states that "the accused in a criminal action who voluntarily testifies in the action upon the merits does not have the privilege to refuse to disclose in that action any material relevant to any issue therein." Defendant, therefore, cannot argue a violation of his Fifth Amendment rights. Ziegler v. United States, 174 F.2d 439 (9 Cir.1949), cert. den. 338 U.S. 822, 70 S.Ct. 68, 94 L.Ed. 499 (1949).
Defendant argues that the subpoena was unreasonable because it was served on him late Sunday night, calling upon him to produce certain files Monday morning. The subpoena was served at approximately 10 o'clock Sunday evening and required the defendant to produce files on 11 claims together with his ledger books for 1967-68, cash book stubs for 1967-68, and Lawyers Diary for the years 1966, 1967 and 1968.
On the motion to quash the subpoena the trial court in denying the motion indicated that the subpoena might have been unreasonable because of the shortness of time which it gave the defendant to search for the records. We agree with the trial court that in that respect it was unreasonable. The *15 trial court, however, accorded the defendant additional time within which to search for the files. We find no prejudicial error.

VI
The jury retired on December 23, 1969 at 5:34 P.M. They returned at 8:30 P.M. with the following question:
Is it a lawyer's responsibility to determine the truthfulness of a claim in a negligence case or does his responsibility lie in only representing his client to the best of his knowledge?
The court answered the question as follows:
A lawyer's duty is, of course, the interest of his client in the maintenance of his client's rights and claims and the exertion of his utmost skill and learning to that end except that in so doing he shall not violate any of the laws. The presentation of a client's claim must be performed within and not without the bounds of law. The office of an attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicanery. He must obey his own conscience and not that of his client.
Now, this particular instruction that I give you now is limited to the question that you have presented to me. You must, nonetheless, in the consideration of your verdict as to the several counts of this indictment consider all of the evidence that has been presented in the case and all of the law that I have instructed you that should be applied to the evidence in this case. I'm going to ask you to please return and continue your deliberations * * *.
The jury returned at 8:56 P.M. with its verdict of guilty.
Defendant argues that the Court's response to the question was not an answer and that the lack of a definite answer was prejudicial error.
The assistant prosecutor had cross-examined the defendant as to the knowledge he had of the circumstances of the accidents of the alleged claimants. The defendant said that his knowledge was based on "only what my client told me."
In summation the assistant prosecutor argued to the jury that there had been no investigation made by the defendant and that they could infer that the claims were fraudulent because *16 the defendant had done nothing by way of investigation. In the course of his summation he said:
But in three cases, in three different years involving the same three people, do you not do anything whatsoever in an attempt to establish that somebody did something wrong unless you know you are never going to have to do it? Because the case is in the bag. I submit to you that you do not and I submit to you that his files will show you that he did absolutely nothing.
The response of the trial court was based upon Canon 15 of the Canons of Professional Ethics. In substance the Court told the jury that an attorney should not act illegally on behalf of his client, but that was not the question that the jury asked. The response given assumes that in this case the attorney, if in fact he had clients who made these claims, knew that their stories were not true. That was the very question that the jury had in mind  what, if anything, should the attorney have done to find out whether his client was telling the truth? The jury was entitled to a direct answer to this question.
It is not an attorney's responsibility to decide the truth or falsity of a client's representations unless he has actual knowledge or unless from facts within his personal knowledge or his professional experience he should know or reasonably suspect that the client's representations are false. The duty of the attorney is to seek for his client all that the client is entitled to under the law and not to act in the first instance as judge and jury. Thode, "The Ethical Standard for the Advocate," 39 Tex. L. Rev. 575, 584 (1961). The final draft of the Code of Professional Responsibility of the American Bar Association's Special Committee on Evaluation of Ethical Standards sets forth certain ethical considerations under Canon 7 which canon provides that a lawyer should represent a client zealously within the bounds of the law. Ethical Consideration 7-26 states:
The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly *17 participates in introduction of such testimony or evidence is subject to discipline. A lawyer should, however, present any admissible evidence his client desires to have presented unless he knows, or from facts within his knowledge should know, that such testimony or evidence is false, fraudulent, or perjured.
The Code of Professional Responsibility was adopted by the House of Delegates of the American Bar Association on August 12, 1969 to become effective for American Bar Association members on January 1, 1970.
We hold that the defendant was prejudiced by the failure of the trial court to give the jury an understandable answer to its inquiry.

VII
In addition to conspiring with the defendant to obtain money from the insurance company, Cortese had also conspired with others. There is some indication in the record that by himself he had embezzled funds from the company. There was in addition testimony showing that he had allegedly paid another attorney $1,500 with which to bribe the Essex County Prosecutor's Office to drop the investigation of his activities. During the cross-examination of Cortese, the trial court refused to allow the defendant to go into the full nature and extent of Cortese's activities against the Maryland Casualty Company and other related circumstances.
It appeared that the Essex County Prosecutor had told Cortese that he would be given immunity if he cooperated with the State in its investigation. This grant of immunity, which was informal as opposed to being in compliance with N.J.S.A. 2A:81-17.3, was as to any and all of Cortese's activities involving the Maryland Casualty Company. Defendant, however, was prevented from showing the full nature and extent of such activities. Defendant alleges that such curtailment was prejudicial error.
There is no doubt that a trial judge has broad discretion in determining the proper limitations of cross-examination *18 of a witness whose credibility is in issue. State v. Pontery, 19 N.J. 457 (1955). It is clear, however, that any fact which bears upon such credibility is relevant and that the party against whom the witness is called has a right to lay all such facts before the jury. State v. Pontery, supra; State v. Black, 97 N.J.L. 361 (Sup. Ct. 1922); Prout v. Bernards Land & Sand Co., 77 N.J.L. 719 (E. & A. 1909). Wide latitude should be allowed to a defendant in the cross-examination of a co-conspirator who is testifying for the State. State v. Curcio, 23 N.J. 521 (1957); State v. Spruill, 16 N.J. 73 (1954). Quite obviously, this is especially true where the witness involved is the principal witness against the defendant and has been given complete immunity from responsibility.
Here the defendant was not allowed to go into the specific circumstances under which the immunity was based or the nature of arrangements made for immunity. He was forced to be content with the general statement that Cortese had been granted immunity by the prosecutor. Defendant was not permitted to inquire as to the full nature, extent and severity of Cortese's alleged offenses arising out of his involvement with Maryland Casualty Company which would have laid bare circumstances other than those for which the defendant here was indicted in which the State could have proceeded against Cortese. This he should have been permitted to do. State v. Mathis, 47 N.J. 455 (1966). Such testimony would have shown the full extent of Cortese's illegal activities for which he was receiving immunity. State v. Hogan, 13 N.J. Misc. 117, 176 A. 709 (Sup. Ct. 1935), aff'd 115 N.J.L. 531 (E. & A. 1935); State v. Black, 97 N.J.L. 361, supra; People v. Moshiek, 323 Ill. 11, 153 N.E. 720 (Sup. Ct. 1926).
It was not appropriate for the trial court to limit the cross-examination to the three charges made in the case. The relevant question is whether there is a motive or interest that affected Cortese's credibility. To this end the defendant should have been allowed to show any possible charges against *19 Cortese arising out of his activities with Maryland Casualty. Evidence of a crime totally unrelated to the charges against the defendant may be shown on the theory that the witness may be biased if such crime, even though unrelated, comes under the jurisdiction of the same prosecuting authorities from whom the witness may expect leniency. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); Spaeth v. United States, 232 F.2d 776 (6 Cir.1956); Commonwealth v. Gable, 171 Pa. Super. 468, 90 A.2d 301 (Super. Ct. 1952); Annotation, "Prosecution Witness  Motive" 62 A.L.R.2d 610 (1958).
The curtailment of the cross-examination is inexplicable to us, particularly in view of the trial judge's statement on the record that "the extent of the immunity is on trial."
The defendant called Robert A. Baime, the assistant prosecutor who had told Cortese that he would be granted immunity. During his direct examination the court stated that it would allow questions going to the extent and scope of the immunity promised but would not allow questions going to the extent and scope of Cortese's involvement in any alleged offense. The effect of the court's ruling was that all the defendant could lay before the jury was that Cortese was told by the prosecutor that he would not be prosecuted "concerning his involvements in his capacity as adjuster and supervisor with Maryland Casualty Company." The defendant was still prohibited from showing what such involvement was and hence what Cortese's interest or motive was. The extent of the immunity was the extent of the involvement. All inquiries in that direction were blocked.
One of the last exhibits offered by the defendant was a statement given by Cortese to the prosecutor which in part referred to his criminal involvement with Maryland Casualty Company. The basis of the offer was to show the scope of the immunity. The offer was denied.
The refusal of the trial court to allow evidence of Cortese's full criminal involvement with Maryland Casualty Company was prejudicial error.

*20 VIII
Defendant raises as a point on appeal that he did not receive a fair trial because the trial judge in the presence of the jury consistently manifested extreme prejudice against the defendant's counsel.
The accusation of prejudicial actions by a trial judge is properly reviewable by an appellate court considering the entire transcript. In reviewing the transcript our function is to ascertain the validity of the claim of prejudice, and we are not to reach a conclusion of harmless error because we may believe that the defendant in fact was guilty as charged. State v. Wolak, 26 N.J. 464, 481 (1958); Weiler v. United States, 323 U.S. 606, 611, 65 S.Ct. 548, 551, 89 L.Ed. 495, 499 (1945).
In State v. Pickles, 46 N.J. 542 (1966) Justice Francis stated at p. 566:
* * * But appellate courts are deeply concerned with the fairness of trials of persons charged with crime whose lives or liberty are at stake. And the intensity of that concern cannot be regulated according to our view of the strength or weakness of the State's case.
A cardinal principle of our legal system is that courts of justice act upon the belief that if guilty, a party will be so found after a fair trial. Both the ends and the means of a trial must be fair, and no matter how abhorrent the offense charged or how evident the guilt, an accused has an absolute constitutional right to a fair trial before an impartial judge and an unprejudiced jury. State v. Jackson, 43 N.J. 148 (1964); State v. Marchand, 31 N.J. 223 (1959); State v. Orecchio, 16 N.J. 125, 142 (1954).
Great latitude is given to a trial judge in the conduct of a trial. There are, however, bounds within which he must stay. A trial judge may intervene in the trial during the introduction of evidence to qualify or expedite matters. The trial judge is the symbol of experience, wisdom and impartiality to the jury and, as such, must take great care that an expression of opinion on the evidence should not be *21 given so as to mislead the jury. He must not throw his judicial weight on one side or the other. State v. Ray, 43 N.J. 19 (1964); State v. Guido, 40 N.J. 191 (1963).
It is not proper for a trial judge to indicate his belief or disbelief of a witness, for to do so would be a usurpation of a duty solely within the province of the jury. State v. Walker, 33 N.J. 580 (1960); State v. Corbo, 32 N.J. 273 (1960); State v. Jones, 104 N.J. Super. 57 (App. Div. 1968), certif. den. 53 N.J. 354 (1969); State v. Hobbs, 90 N.J. Super. 146 (App. Div. 1966).
A trial judge should never unfairly criticize or humiliate defense counsel or a defense witness. State v. Guido 40 N.J. 191, supra. Where it appears that the trial judge has turned the jury against the defendant by mistreating defendant's counsel in front of the jury, a new trial is required. United States v. Persico, 305 F.2d 534 (2 Cir.1962); United States v. Ah Kee Eng, 241 F.2d 157 (2 Cir.1957); Meeks v. United States, 11 Alaska 378, 163 F.2d 598 (9 Cir.1947); Annotation, "Conduct of Court  Rebuking Counsel," 62 A.L.R.2d 166, 220 (1958). Canons 5 and 10 of Canons of Judicial Ethics make it clear that trial judges must be courteous to counsel and be temperate, attentive, patient and impartial. A judge's failure to comply with these canons can easily prejudice a jury since it conveys the opinion of the judge as to his belief or disbelief in one side of the case. State v. Lemon, 107 N.J. Super. 101, 105 (App. Div. 1969). Attorneys are as much a part of the judicial system as judges. Without the active cooperation of attorneys our system of justice will come to a grinding halt. To demean an attorney, particularly in front of a jury, is completely unacceptable. It not only prejudices the litigant, but it goes to discourage lawyers from becoming trial attorneys. If we do not have an adequate number of lawyers willing to be trial attorneys, the judicial system as we know it will not survive.
We have carefully reviewed the transcript, and we come to the conclusion that the conduct of the trial judge *22 towards defense counsel tended strongly to prejudice the defendant in the eyes of the jury. Nowhere in the long record is there any indication that defense counsel provoked the court. We find no indication of any impropriety on the part of defense counsel. No single instance may have been sufficient in itself to warrant a reversal. Taken in the aggregate, however, the actions of the trial judge convince us that the defendant was deprived of a fair trial. Biruk v. Wilson, 50 N.J. 253 (1967); State v. Orecchio, 16 N.J. 125, supra.
Schedule A lists some of the many instances in which the trial judge dealt unfairly with defense counsel.
[Schedule omitted.]
In addition to the prejudicial treatment of defense counsel, the trial judge committed numerous errors which taken with defense counsel's treatment make it crystal clear that the defendant did not receive a fair trial. See Schedule B.
[Schedule omitted.]
We have reviewed the other points of the defendant: that the summation of the prosecutor was improper and prejudicial so as to deny a fair trial; that the defendant was denied due process of law because he was not allowed to sum up last; that the denial of the severance of the counts denied the defendant a fair trial; that the prosecutor's summation was unfairly prejudicial in that the prosecutor argued that Cortese had no interest in the outcome of the case by virtue of the terms of immunity; and that the charge to the jury that they could consider the interest of a witness in the outcome of the case in determining credibility deprived the defendant of a fair trial, and find that none of these points are of substance.
The judgment of conviction is reversed, and the matter is remanded for a new trial.