136 N.J. Super. 310 (1974)
346 A.2d 92
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN J. LEMKEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1974.
Decided October 31, 1974.
*312 Before Judges CARTON, CRANE and KOLE.
Mr. Seymour Margulies argued the cause for appellant (Messrs. Brigadier and Margulies, attorneys).
*313 Mr. Michael A. Graham, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney).
PER CURIAM.
Defendant appeals from his convictions for conspiring, with co-defendant John Marinan, to obtain money by false pretenses (N.J.S.A. 2A:98-1(e), (f), 2A:98-2) and the substantive charge of obtaining money by false pretenses (N.J.S.A. 2A:111-1). He was given concurrent suspended sentences of 1 to 2 years to State Prison, fined a total of $2,000 and placed on probation for 2 years. His co-defendant, also convicted, has not appealed.
The offenses of which defendant, an attorney-at-law of this State, was convicted arise from his alleged role, between May 1969 and June 1970, in obtaining some $1,560 from William Topken, the administrator of the estate of Emil Klein, as payment for funeral and burial services which were never provided. During this period defendant held the office of First Assistant Counsel to Hudson County, a part-time position, while his co-defendant Marinan held the position of morgue custodian at Meadowview Hospital, Secaucus, a county institution.
Klein died at Meadowview Hospital on May 22, 1969. On June 9, 1969, Marinan, in his official capacity, had Klein buried at Jersey City Cemetery. The burial was by "right of burial" at a fee of $45. Klein's body was transported to the cemetery in a station wagon rather than a hearse and there were no pallbearers present at the burial. The casket, a pine box, was valued at $25 to $30. No religious service was provided.
Marinan received two payments aggregating $755 in May and June 1969 for his services. On May 28 he was paid $500 from Klein's Patient Trust Fund maintained by the hospital. On June 12 he received $255 on his voucher to the Hudson County Board of Freeholders.
In addition to these payments Marinan submitted a bill of $2,060 for Klein's funeral. By letter of November 17, *314 1969 Lemken sent this bill of Marinan to William Topken, who had been appointed administrator of Klein's estate. Marinan's bill included large sums for a casket; $275 for cemetery fees; $38 for a hearse; $42 for pallbearers and $25 for "pastor offering." Thus, Marinan's bill plainly constituted a false representation.
It is also clear that Marinan, in addition to the moneys from the Patient Trust Fund and the County, received $1,560  $255 in lump sum death benefits from Social Security as approved by Topken and $1,305 paid directly by Topken, the balance claimed to be due on the $2,060 bill. The charges here involved center around the payment of this $1,560 to Marinan by or with the approval of Topken pursuant to the alleged conspiracy and false pretenses.
Defendant first contends that the court should have granted his motion for acquittal at the end of the State's case. His claim is that the evidence then adduced, admittedly circumstantial in nature, would not permit a jury reasonably to infer beyond a reasonable doubt (1) that Lemken was involved with Marinan in a conspiracy knowingly and intentionally to defraud or obtain moneys by false pretenses from Topken, the administrator of Klein's estate, or that, when he transmitted Marinan's bill or information relating thereto to Topken, he had any knowledge as to the falsity of the funeral expenses or moneys due thereon; and (2) that, with respect to the false pretenses count, he either knew the bill or information relating thereto to be false or in any wise intentionally and knowingly aided and abetted in making fraudulent representations to Topken, or that Topken relied on any misrepresentation made by defendant.
In deciding whether the trial court was correct in denying the motion, we of course, take into account only the evidence on the State's case, unaided by what defendant later developed at trial. Applying the standard applicable to this type of motion. R. 3:18-1; State v. Allen, 53 N.J. 250 (1969); State v. Reyes, 50 N.J. 454 (1967), we are satisfied that defendant's contention is without merit.
*315 Defendant argues that the circumstantial evidence introduced by the State engendered mere speculation or conjecture as to the foregoing required predicates for guilt. Not so. Where, as here, the proofs at the end of the State's case plainly permitted reasonable inferences by a jury that defendant committed the crimes charged beyond a reasonable doubt, the motion for acquittal was properly denied. See State v. Fiorello, 36 N.J. 80 (1960), cert. den. 363 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524 (1960); State v. Graziani, 60 N.J. Super. 1 (App. Div. 1959), aff'd o.b. 31 N.J. 538 (1960), cert. den. 363 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524 (1960); State v. Yormark, 117 N.J. Super. 315 (App. Div. 1971), certif. den. 60 N.J. 138 (1972), cert. den. 407 U.S. 925, 92 S.Ct. 2459, 32 L.Ed.2d 812 (1972); State v. Mayberry, 52 N.J. 413, 437 (1968); State v. Allen, supra; State v. Zwillman, 112 N.J. Super. 6 (App. Div. 1970).
Defendant erroneously relies on such cases as State v. La Fera, 42 N.J. 97 (1964); United States v. Bethea, 143 U.S. App. D.C. 68, 442 F.2d 790 (D.C. Cir.1971); United States v. Herthaus, 391 F.2d 810 (3 Cir.1968); State v. Madden, 61 N.J. 377 (1972); United States v. Glantzman, 447 F.2d 199 (3 Cir.1971); and State v. Greco, 29 N.J. 94 (1958). All of these cases involve factual settings substantially different from the evidence before us.
Giving the State the benefit of all favorable evidence and inferences therefrom, its case rests basically on a series of events and letters that defendant wrote, as county counsel and as a private attorney, relating to Klein, his estate and his funeral expenses, as well as on defendant's relationship with the county hospital and Marinan, its morgue custodian.
Klein died May 22, 1969. Before his June 9 pauper's burial by Marinan, on June 6 Lemken wrote a letter to Klein's sister in West Germany, in which he notified her that Klein had died and had asked the manager of the "home in which he lived" to have defendant handle his affairs, asked to be appointed administrator of the estate, and stated that "I have undertaken already to see to it that he has a proper funeral, *316 and am sure that there are considerable funds available to be transferred to you after the * * * administration work has been accomplished." On November 17, 1969, after learning that Topken had been appointed administrator of Klein's estate, defendant wrote a letter to Topken, with his name signed by his secretary, stating the following:
In accordance with our telephone conversation, enclosed herein please find copy of funeral bill as submitted by Marinan Funeral Home.
I felt that since there was considerable funds and since I had written to the sister that I would see to it that he had a decent funeral, I authorized Mr. Marinan to go beyond the monies as set out by the hospital so that the deceased would have a burial in accordance with his means.
The enclosed Marinan bill was for the $2,060 already referred to.
By letter of May 18, 1970 from Lemken to J. Nicholas Suhr, an attorney in Topken's office assigned to the matter, Lemken noted that Marinan's bill for $2,060 had been decreased by credits of $500 (for the payment from Emil Klein's Meadowview Trust Fund) and $255 from Social Security. He asked that payment to the Marinan Funeral Home of the remaining $1,305 be expedited.
The State thus established that Marinan's inflated funeral expense bill was forwarded to Topken, as administrator of Klein's estate, accompanied by a letter over defendant's name, and a later request by defendant for payment. From these circumstances, it may reasonably be concluded beyond a reasonable doubt that defendant and Marinan had agreed to cooperate in actions designed to see that the bill be paid. There is thus no merit to defendant's argument that the State failed to establish a prima facie case of the existence of an agreement or combination. See State v. Yormark, supra, 117 N.J. Super. at 330; State v. Louf, supra, 126 N.J. Super. at 339.
At the end of its case the State's evidence supported an inescapable conclusion that the bill submitted by Marinan *317 through defendant was false. It also supported an inference beyond a reasonable doubt that an illegal purpose  to obtain money by false pretenses from the administrator  was intended by the agreement and that such intention was known by and participated in by defendant. Defendant was a First Assistant County Counsel. He wrote letters, including those referred to, in connection with Klein in both his capacity as such Counsel and as a private attorney. He was performing work relating to the Meadowview Hospital. He was aware of Marinan's capacity as morgue custodian at that county institution. At least two letters over defendant's name vouch for the false bill. The letter to Paula Klein indicated that defendant had arranged for her brother's funeral. The November 17 letter to the administrator stated that defendant authorized a more expensive funeral.
Thus, at the close of the prosecutor's case, there were proofs that defendant had claimed a role for himself in arranging and authorizing a funeral for Klein; that he had no such role; that Marinan's bill for Klein's funeral, submitted to the administrator of the estate, falsely alleged provisions for elaborate and expensive services; and that defendant was instrumental in transmitting this false bill to the administrator. This evidence plainly supports an inference beyond a reasonable doubt that defendant knew the bill to be fraudulent and the transmittal by him of that bill to Topken was by virtue of an agreement or conspiracy with Marinan to defraud the administrator and obtain money from him by false pretenses. It was more than adequate to withstand a motion for judgment of acquittal on the conspiracy charge at that juncture.
What we have said as to Lemken's knowledge of the fraud and his intentional participation therein applies as well to the propriety of the court's denial of the acquittal motion on the substantive charge that defendant aided and abetted Marinan in committing the crime of obtaining money by false pretenses.
*318 However, with respect to that charge, defendant argues that the State failed to establish that the administrator, an attorney, paid the money for the funeral bill in reliance on a misrepresentation by defendant. Reliance by the aggrieved party is a necessary element to be proved for that crime. The extent of reliance, however, need not be great or sole or exclusive. State v. Zwillman, supra, 112 N.J. Super. at 12-13; State v. Allen, supra.
Since defendant is charged with aiding and abetting Marinan in obtaining money by false pretenses, it is not necessary for the State to prove that he, rather than Marinan, made the false representation. If, as already stated, the proofs show that he intentionally and knowingly aided and abetted Marinan in this endeavor, he is guilty as a principal, even though the representation actually was made by Marinan. See State v. Zwillman, supra; State v. Louf, supra, 64 N.J. at 177-178; State v. Humphreys, 101 N.J. Super. 539 (App. Div. 1968), mod. 54 N.J. 406; State v. Madden, supra, 61 N.J. at 393; State v. Mayberry, supra, 52 N.J. at 438; State v. Humphreys, 54 N.J. 406, 417 (1969).
In any event, the State's evidence manifestly leads to the inference, beyond a reasonable doubt, that it was defendant's false representations that were relied on, at least in part, by the administrator in paying the balance due on the bill to Marinan. Suhr, an agent of the administrator, testified that he applied for the lump-sum death benefits and issued the check relying to some extent on the defendant's letter of November 17 to the administrator, enclosing Marinan's bill. Such reliance suffices in connection with the false pretenses charge under N.J.S.A. 2A:111-1. State v. Zwillman, supra. Defendant claims that Suhr relied on the bill and his admitted knowledge of the law that a body must be buried, but not on the recital by Lemken of his authorization in the November 17 letter of transmittal, "as he knew or should have known of Lemken's lack of authority" as to any expenditure by the estate. This claim is specious.
*319 Defendant also argues that the State failed to establish that he actually wrote the letters bearing his name which were put into evidence. This argument is without merit. The State proved that these letters were on defendant's stationery, bore his name and were signed by his secretary, who had authority to sign his name. The only reasonable inference, at least at the end of the State's case, is that defendant authorized and was responsible for the contents of the letters.
There is no basis for contending, as defendant appears to do, that at best on its case the State established by reasonable inference that he was an innocent conduit for Marinan's bill or was simply doing Marinan a favor.
We conclude, therefore, that the court's denial of the motion for judgment of acquittal at the end of the State's case was proper.
Defendant Lemken testified. He stated that he did not dictate the November letter to Topken but merely directed his secretary to forward the Marinan Funeral Home bill. The letter to Klein's sister, he said, was written by his secretary under his general instructions. He admitted that his claim in the latter communication that he had made funeral arrangements was inaccurate and his statement in the letter to Topken that he had authorized Marinan to provide a more expensive funeral was false. He denied that he had power to authorize any kind of funeral. Most of the information contained in the letter to Klein's sister came from Marinan, including the statement that Klein had indicated to the "manager in the home in which he lived" that Lemken would handle Klein's affairs. One of the reasons he wrote her was his interest in becoming administrator of Klein's estate. He knew Marinan to be a funeral director. They met fairly regularly at Lemken's county office in their official capacities. Lemken was executor of two other estates of decedents who had resided at the hospital and who died in June and July 1969. He had paid the Marinan Funeral Home bills for the expense of their funerals early in 1970. *320 Prior to transmitting Marinan's bills, he was aware in 1969 that Marinan had been discharged in bankruptcy.
The remaining contentions of defendant may be examined in the light of this evidence and that of the State, some of the salient features of which have already been discussed.
Defendant challenges the court's admission on the State's main case of testimony by Reverend Winter that some time during Klein's hospital stay he had refused, because of superstition, to make a will.[*] He also charges
[*] We have not discussed Reverend Winter's testimony on the State's case in connection with the motion for judgment of acquittal, since we are satisfied that the other proofs mentioned warranted denial of the motion.
error in the court's permitting, on rebuttal, the State to introduce the hospital report of Klein's mental condition. That report indicated that on January 29, 1968, some 16 or 17 months before his death, Klein was mentally confused and disoriented, with severe memory defects and incoherent speech. He had been admitted to the hospital in early January 1968.
The foregoing proofs were relevant as tending to demonstrate the lack of credibility of the statements contained in defendant's letters, as well as the defense that, in transmitting the false funeral bill, defendant was acting not as charged in the indictment, but merely as an innocent emissary of Marinan. Klein's relationship to defendant was a matter raised by the latter in his correspondence. The time span covered by the evidence was relatively limited. Under all of the circumstances, we cannot say that the court abused its discretion in admitting these proofs. In any event, we find that, considering all of the proofs before the jury, the introduction of the Winter testimony and the hospital record visited no prejudice on defendant.
Defendant argues that evidence of Marinan's bankruptcy was irrelevant and prejudicial. We disagree. It was *321 relevant to show that by reason of his awareness of the financial status of Marinan's business, defendant knew that Klein's funeral bill was fraudulent and thus knowingly participated with Marinan in obtaining money by false pretenses. Nor do we see any substantial prejudice to the defendant by reason of this evidence. We note that the trial court's instruction with respect to the proofs as to the bankruptcy effectively dissipated whatever vestige of prejudice might be claimed. Defendant further contends that his trial strategy was adversely affected by the admission of this evidence after the trial judge deferred his decision on whether it should be admitted. The contention has no merit.
For reasons similar to those already given, we have concluded that the evidence relating to the payment of funeral bills to Marinan by Lemken as executor of the estates of two former patients at the hospital, who had died in June and July of 1969, was relevant and not prejudicial. These proofs served a legitimate probative purpose. That Lemken had other dealings with Marinan in his private capacity as a funeral director was relevant to the question of Lemken's knowledge of Marinan's operations and whether the Klein bill was fraudulent. Moreover, this evidence afforded defendant the opportunity, of which he availed himself, to indicate to the jury a contrary pattern of innocent acquiescence in the unquestioning acceptance of all funeral bills. This evidence was sufficiently relevant to outweigh any possible prejudice to defendant. Its admissibility was thus an appropriate exercise of the court's discretion. See McCormick on Evidence, pp. 346-348; State v. Yormark, supra, 117 N.J. Super. at 337. Cf. State v. Professional Credit Corp., 112 N.J. Super. 286, 289-290 (App. Div. 1970); State v. La Fera, 42 N.J. 97, 119 (1964).
We hold that the admission of the items of evidence complained of was not erroneous. But even if there were error in this respect, it was harmless. Such evidence, taken together, when considered in the light of all of the proofs in the case and the nature of the offenses charged, had no *322 such real possibility for prejudice as to warrant a conclusion that, by reason thereof, the jury arrived at the wrong result. See State v. Graziani, supra; State v. Yormark, supra; State v. Di Paglia, 64 N.J. 288, 296 (1974); State v. Bankston, 63 N.J. 263, 273 (1973).
Defendant contends that the trial court's charge to the jury with respect to the crimes here involved was erroneous. We have carefully examined the court's instructions and are satisfied that, read as a whole, they clearly informed the jury as to the proper law to be applied with respect to each of the crimes charged, including the requisite intent therefor. See State v. Wileby, 63 N.J. 420, 422 (1973); State v. Thompson, 59 N.J. 396, 411 (1971); State v. Kelly, 61 N.J. 283, 295 (1972).
More particularly, we see no departure in the charge from the requirement set forth in State v. Malaspina, 120 N.J. Super. 26 (App. Div. 1972), certif. den. 62 N.J. 75 (1972), that the jury find an overt act alleged in the indictment. The court not only read the indictment to the jury, including the list of overt acts, but in so doing, it properly focused the jury's attention on the necessity to find that an overt act alleged in the indictment had been committed before it could conclude that defendant was guilty of the conspiracy. Moreover, in the present case, as in Malaspina, by finding defendant guilty of the crime of obtaining money by false pretenses substantially as alleged in the fourth overt act set forth in the conspiracy count, the jury in effect found that one of the overt acts alleged in furtherance of the conspiracy had been proven. Thus, even though the court did not specifically instruct that the jury had to find the existence of at least one of the overt acts alleged in the indictment, defendant suffered no prejudice. We are also satisfied that the court's charge did not, as defendant claims, in any wise lead the jury into believing that an act or statement of a conspirator during the course of the conspiracy itself could establish the conspiracy. The other challenges to the court's instructions are without merit.
*323 Defendant argues that (1) the original indictment failed to charge a crime, because it named an estate, an entity that cannot be the object of a conspiracy to obtain money by false pretenses; (2) the amendment by the trial court of the conspiracy count to reflect that the object of the fraud was the administrator of the estate constituted an impermissibly substantive, rather than merely a technical, amendment; and (3) the second count involving the crime of obtaining money by false pretenses failed to charge defendant with that crime since it used passive language in referring to the defendant. We find no substance to any of these contentions. See State v. La Fera, 35 N.J. 75, 81 (1961); State v. Spano, 128 N.J. Super. 90, 92 (App. Div. 1973), aff'd 64 N.J. 566 (1974); R. 3:7-3(a); R. 3: 7-4. From the outset defendant was fully notified of the nature of the charges against him and was in no way prejudiced by the amendment, which was strictly a matter of form. We find without merit defendant's claim that the language of the false pretenses count, because of the passive manner in which it charges him with aiding and abetting, fails to allege the substantive crime. See N.J.S.A. 2A: 85-14; State v. Ellrich, 10 N.J. 146, 151 (1952). The case of State v. Sullivan, 77 N.J. Super. 81 (App. Div. 1962) cited by defendant is inapposite. It dealt with the distinction between a principal and an accessory after the fact. Here, defendant was charged as an aider and abettor  an accessory before or to the fact.
Affirmed.