**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3354-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KENNETH HUTCHINS,

    Defendant-Appellant.

_____

Submitted May 16, 2017 — Decided June 30, 2017

Before Judges Koblitz & Sumners.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 12-
08-2119.

Joseph E. Krakora, Public Defender, attorney
for appellant (Laura B. Lasota, Assistant
Deputy Public Defender, of counsel and on the
brief).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Camila
Garces, Special Deputy Attorney General,
Acting Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

Defendant Kenneth Hutchins appeals from his convictions after trial in connection with the robbery of a laundromat. He argues the investigating detective's trial testimony that defendant's picture bore a "striking resemblance" to the man in the laundromat's surveillance tape coupled with the trial judge's comments to defense counsel deprived him of a fair trial. We disagree and affirm the convictions. We remand, however, for resentencing, because in his effort to correct an illegal sentence, the judge resentenced defendant to a significantly longer real-time prison term without an adequate explanation of the reasons.

A jury convicted defendant of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and 2C:15-1(b), and second-degree robbery as a lesser-included offense of armed robbery, N.J.S.A. 2C:15-1(b). Defendant was found not guilty of first-degree robbery and the related gun charges.

The trial testimony revealed the following facts. On October 27, 2011, at approximately 7:20 a.m., a man entered the laundromat, looked around and left. The man was not carrying any laundry and was in the store for about a minute. The owner greeted the man and got a good look at his face. The man was black with white facial hair and wore a hat.

A few minutes later, the man came back into the store through the front door, this time with a handkerchief covering the bottom

half of his face. The owner could still see the white hair on the man's beard. The man put a gun to the owner's forehead.

Another man wearing a "hoodie" and carrying a bag entered the store through the middle door. The man with the gun removed money from the owner's pockets, and directed the owner to open the cash register. After the owner opened the cash register, the second man took the cash and a jar of coins, totaling $3000. The police arrived five minutes later.

Detective James Iaiosa of the South Orange Police Department responded to the laundromat and copied the video surveillance onto a thumb drive. The owner reported that the two men left in a car that was parked in the parking lot. Iaiosa went to the parking lot and saw that it was relatively empty and clean and only the owner's car was parked. He noticed a single plastic cigar tip close to the exit. Iaiosa thought the cigar tip was "freshly discarded" because it had rained the night before and the ground was still wet, but the cigar tip "wasn't wet" and "wasn't squashed." The DNA on the cigar tip matched defendant's DNA. The video surveillance was played for the jury during Iaiosa's testimony and Iaiosa narrated what the video depicted. Iaisoa compared defendant's photo with the image in the video surveillance and testified that "there was a striking resemblance between the two."

The shop owner picked defendant's photograph from a lineup and testified he was 80% sure that defendant was the man with the gun. After his arrest, defendant was brought into the holding area of the jail. Iaisoa testified that he noticed that defendant was wearing "similar sneakers [to those] that were used by the person in the robbery."

Defendant raises the following issues on appeal:

> POINT I: AS IDENTIFICATION WAS THE MAIN ISSUE IN THE CASE, THE DETECTIVE'S TESTIMONY NARRATING THE EVENTS ON THE VIDEO SURVEILLANCE AND OPINING THAT DEFENDANT BORE A STRIKING RESEMBLANCE TO ONE OF THE PERPETRATORS INVADED THE PROVINCE OF THE JURY, AND USURPED THE JURY'S ROLE OF DETERMINING THE IDENTITY OF THE PERPETRATOR, IN VIOLATION OF N.J.R.E. 701 AND DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL. ADDITIONALLY, THE TRIAL COURT'S IDENTIFICATION CHARGE WAS DEFICIENT, NECESSITATING REVERSAL. (Not Raised Below)
>
> A. IAIOSA'S IMPROPER LAY WITNESS OPINION TESTIMONY.
>
> B. THE TRIAL COURT'S INCOMPLETE IDENTIFICATION INSTRUCTION.
>
> POINT II: DEFENDANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE TRIAL JUDGE MADE A PREJUDICIAL COMMENT ABOUT DEFENSE COUNSEL'S CROSS-EXAMINATION OF THE VICTIM IN THE PRESENCE OF THE JURY.
>
> POINT III: THE SENTENCING COURT ERRED IN RESENTENCING DEFENDANT TO AN EIGHTY-FIVE PERCENT PAROLE DISQUALIFIER WITHOUT FIRST CONDUCTING A FULL RESENTENCING HEARING OR CONSIDERING THE IMPACT OF THAT PAROLE DISQUALIFIER ON THE SEVENTEEN YEAR BASE TERM ORIGINALLY IMPOSED BY THE COURT. MOREOVER,

A-3354-14T2

THE SENTENCE IMPOSED IS MANIESTLY EXCESSIVE
AND MUST BE REDUCED.

I

Defendant argues for the first time on appeal, in Point I of his brief, that reversal is required because Detective Iaiosa offered lay opinion witness testimony in violation of N.J.R.E. 701 when he testified at trial that defendant bore a "striking resemblance" to one of the perpetrators in the surveillance video and that the shoes defendant was wearing when he was arrested were similar to those "that were used by the person in the robbery." Defendant cites State v. Lazo, 209 N.J. 9 (2012) in support of his position.

Because defendant did not raise this issue at trial, we must review the issue for plain error. Plain error is "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his [or her] defense." State v. Timmendequas, 161 N.J. 515, 576-77 (1999) (quoting State v. Irving, 114 N.J. 427, 444 (1989)), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). "[A]ny finding of plain error depends on an evaluation of the overall strength of the State's case." State v. Chapland, 187 N.J. 275, 289 (2006).

N.J.R.E. 701 permits lay opinion testimony that is "rationally based on the perception of the witness" and "will

assist in understanding the witness' testimony or in determining a fact in issue."  Lay opinion testimony "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence."  State v. McLean, 205 N.J. 438, 462 (2011) (reversing the defendant's possession with intent to distribute convictions because a police officer, who observed the defendant hand an item to an individual in exchange for money, testified as to his opinion that a drug transaction had occurred).

In State v. Lazo, the issue was whether it was proper for a detective who had no personal knowledge of the crime to testify at trial that he included the defendant's photo in a photo array because defendant's photo resembled the composite sketch of the assailant.  Lazo, supra, 209 N.J. at 12.  In Lazo the issue had been fully raised and argued at trial and thus was not raised as plain error as it is here.  Our Supreme Court noted that "[t]he victim's identification was the only evidence linking defendant to the crime.  No physical evidence or other corroboration of the identification was presented."  Id. at 15.  The jury in Lazo convicted the defendant of second-degree robbery and second-degree conspiracy to commit robbery.  Id. at 16.

The Court held that the detective's testimony violated N.J.R.E. 701 because his opinion was not based on personal

knowledge and the testimony only served to bolster the victim's identification, which was the sole basis of the defendant's conviction. Id. at 24. The Court reversed, holding that "[n]either a police officer nor another witness may improperly bolster or vouch for an eyewitness' credibility and thus invade the jury's province." Ibid. Because the identification was the only evidence against the defendant, the Court could not "conclude that the error was harmless." Id. at 27.

Here, Iaiosa's testimony that he believed defendant's photo closely resembled the man in the surveillance video also violated N.J.R.E. 701 because his opinion was not based on personal knowledge and defendant's resemblance to the man in the videotape was within the province of the jury to determine. Unlike Lazo, however, the issue was not raised at trial, and thus we know it did not appear a problem to defense counsel at the time the testimony was elicited. See Timmendequas, supra, 161 N.J. at 576. Also unlike Lazo, the victim's identification of defendant was not the only evidence in this case. Defendant's DNA was found on a cigar tip found in the parking lot of the crime scene. The error of the detective opining as to the resemblance of defendant to the man in the surveillance video did not deprive defendant of a fair trial. The jury could see the video and decide for itself.

7

Defendant also argues as plain error in Point I that if we determine Iaiosa's testimony was not harmful error, reversal must still be granted because the trial court's instruction on identification was incomplete. The first perpetrator covered the bottom portion of his face with a handkerchief. Defendant argues that the trial court failed to instruct the jury that it could consider the effect this disguise may have had in evaluating the reliability of the owner's identification.

"Clear and correct jury instructions are essential for a fair trial." State v. Randolph, 441 N.J. Super. 533, 558 (App. Div. 2015) (quoting State v. Brown, 138 N.J. 481, 522 (1994)), aff'd by, ___ N.J. ___ (2017). "'[E]rroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)). However, "[n]o party is entitled to have the jury charged in his or her own words; all that is necessary is that the charge as a whole be accurate." State v. Jordan, 147 N.J. 409, 422 (1997). The plain error analysis of an erroneous jury charge mandates that the reviewing court examine the charge as a whole to determine its overall effect. State v. McKinney, 223 N.J. 475, 494 (2015).

Here, the court provided the jury with the Model Jury Charge for out-of-court identifications. Model Jury Charge (Criminal),

"Identification: Out-of-Court Identification Only" (2012). The instruction on "disguises/changed appearance" was not sought or given. The owner testified that defendant came into his store with his face in plain view just minutes before he returned with his face partially covered. The owner said he recognized defendant as the same man who had entered originally. Under these circumstances, the court's failure to tell the jury that a disguise "can affect a witness's ability both to remember and identify the perpetrator" did not constitute plain error. Model Jury Charge (Criminal), "Identification: Out-Of-Court Identification Only — Disguises/Changed Appearance" (2012).

## II

After defense counsel asked the owner what percentage of customers used each door in the laundromat, the judge had a sidebar conference during which he complained to defense counsel that she was not asking relevant questions. The judge then said to the witness in front of the jury, "Alright, you can answer that question. Then we'll move on to something else, something that may have some relevancy." At another point, after defense counsel repetitively cross-examined the owner, the judge said, "Asked and answered. Next question. Let's move on to something else . . . . We've beat this -- beaten this dead horse enough."

At that point, defense counsel requested a sidebar. During sidebar, defense counsel stated that the judge's characterization of her cross-examination as "beating a dead horse" was prejudicial to defendant. The court and defense counsel then had the following exchange:

> THE COURT: Number 1, it's not prejudicial to anyone because you've drawn out this cross-examination for about 35, 40 minutes now, and you keep repeating the same question over and over again. So, move on to something else. If you have an application to make, I will hear the application. If not, move on to something else.
>
> (End of discussion at sidebar).
>
> THE COURT: Alright, [defense counsel], you have any other questions to ask, uh, --
>
> DEFENSE COUNSEL: Yes, I do, Your Honor.
>
> THE COURT: -- that you haven't previously covered, please?

Defendant argues that the court's comment in front of the jury that defense counsel was "beating a dead horse" during defense counsel's cross-examination had the capacity to prejudice defendant and deprived him of a fair trial.

The trial judge charged the jury that "any remarks made by me to counsel or by counsel to me, or between counsel are not evidence and must not affect or play any part in your deliberations." We presume the jury follows the court's

instructions.  State v. Martini, 187 N.J. 469, 477 (2006), cert. denied, 549 U.S. 1223, 127 S. Ct. 1285, 167 L. Ed. 2d 104 (2007).

"Our standard in reviewing a claim of prejudicial intervention by a trial judge is whether 'it appears [the] trial judge has turned the jury against the defendant.'"  Hitchman v. Nagy, 382 N.J. Super. 433, 452 (App. Div. 2006) (quoting Mercer v. Weyerhaeuser, 324 N.J. Super. 290, 298 (App. Div. 1999)).  We consider the entire transcript when reviewing prejudicial conduct of a judge.  State v. J.J., 397 N.J. Super. 91, 102-03 (App. Div. 2007).

Trial courts have wide discretion in supervising conduct at trial.  State v. Zwillman, 112 N.J. Super. 6, 20 (App. Div. 1970), certif. denied, 57 N.J. 603 (1971).  Within that discretion is the court's right to control the discussions of counsel to prevent an "unreasonable consumption of public time and delay in the transaction of the business of the courts."  State v. Tilghman, 385 N.J. Super. 45, 54 (App. Div. 2006) (citation omitted) (affirming defendant's conviction despite finding that the court's comments during defense counsel's summation to "give these jurors a break" and "this isn't a filibuster" were inappropriate because the comments were not sufficiently prejudicial to deny defendant a fair and impartial trial).

> A defendant's Sixth Amendment rights to an
> impartial jury and effective assistance of

11

> counsel act as a qualifying factor limiting the court's otherwise broad superintending control over the presentation of arguments at trial. Time allotted to counsel "must be reasonable and of such length as not to impair the right of" a criminal defendant to present his defense to the jury.
>
> [Id. at 54-55 (citation omitted).]

Ultimately, the judge's exercise of discretion must insure a fair trial. Id. at 54. "Where it appears that the trial judge has turned the jury against the defendant by mistreating defendant's counsel in front of the jury, a new trial is required." Zwillman, supra, 112 N.J. Super. at 21.

Here, the court expressed some impatience with defense counsel's cross-examination of the owner. Such expressed judicial disapproval should be avoided. See Tilghman, supra, 385 N.J. Super. at 59-62. Given the strength of the State's proofs, however, and in light of the jury instruction to disregard any such comments, the court's comments did not constitute reversible error.

### III

Defendant was sentenced on March 21, 2014, when the court merged the two second-degree convictions. The court found aggravating factors three, the risk that the defendant will re-offend; six, the extent of the defendant's prior criminal record and the seriousness of the offense of which he has been convicted;

and nine, specific and general deterrence. N.J.S.A. 2C:44-1(a)(3), (6) & (9). The court found no mitigating factors, N.J.S.A. 2C:44-1(b), and sentenced defendant to a mandatory extended prison term, requiring a prison term of ten to twenty years. N.J.S.A. 2C:43-7.1(b)(1); N.J.S.A. 2C:43-7(a)(3). Although defendant faced a maximum term of twenty years, the court determined a seventeen-year term, subject to eight years of parole ineligibility, was appropriate.

After the State filed a motion to correct an illegal sentence, on July 1, 2016, the court changed the eight-year mandatory minimum to an eighty-five percent parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court maintained the seventeen-year maximum prison term. In resentencing defendant to the same base term subject to a harsher NERA parole-ineligibility period, the sentencing court failed to consider the defendant's eligibility for release as required by N.J.S.A. 2C:44-1(c)(2). The court's only expressed rationale was that he had been "mistaken" in not originally imposing an eighty-five percent parole disqualifier. A remand for resentencing is necessary because the court's explanation is inadequate. State v. Fuentes, 217 N.J. 57, 70 (2014). The court must explain why it imposed a parole disqualifier approximately six and one-half years longer than that originally imposed when it had the discretion to impose

13                                                    A-3354-14T2

a sentence of ten years with NERA, which would have limited defendant's real time to be served to approximately the same period as the original sentence.

The convictions are affirmed. The sentence is reversed and remanded for resentencing. The sentencing judge should give the reasons for any change in real time consequences from the first sentence imposed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION