**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4021-14T2
            A-4026-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

COBY T. RICHARDSON,
a/k/a COLBY RICHARDSON, COLBY
TIMOTHY RICHARDSON,[1]

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JEFFERY RICHARDSON, a/k/a
JEFFERY OSBORNE RICHARDSON,
JEFFREY RICHARDSON, JEFFERY O.
RICHARDSON, JEFFREY RICHRARDSON

    Defendant-Appellant.

_____

Submitted May 25, 2017 – Decided June 23, 2017

_____

[1]   Co-defendants' names are spelled differently throughout the
transcripts and record on appeal.  Although the judgment of
conviction uses "Coby," it was established defendant's birth name
is "Colby."  Regarding co-defendant, we use the spelling adopted
in his supplemental pro se brief, "Jeffery."

Before Judges Lihotz, Hoffman and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 12-04-1144.

Joseph E. Krakora, Public Defender, attorney for appellant Colby T. Richardson (Jack L. Weinberg, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Jeffery Richardson (Louis H. Miron, Designated Counsel, on the brief).

Carolyn A. Murray, Acting Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In these back-to-back appeals we consider the arguments by co-defendants, who appeal from their respective convictions following a joint jury trial and the sentences imposed. More specifically, Colby Richardson appeals from a March 6, 2015 judgment of conviction for these offenses: third-degree receiving stolen property, N.J.S.A. 2C:20-7 (count two); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count three); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count four); second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f) (count six); fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f) (count seven); fourth-degree possession of an illegal ammunition

magazine, <u>N.J.S.A.</u> 2C:39-3(j) (count eight); and fourth-degree resisting arrest, <u>N.J.S.A.</u> 2C:29-2(a) (count nine). Defendant was acquitted of eluding police (count one) and possession of hollow point bullets (count five). On appeal, Colby argues:

> POINT I
> THE TRIAL COURT ERRED IN RULING ADMISSIBLE THE 9-1-1 TAPE BECAUSE THE STATE FAILED TO ESTABLISH THAT THE CALLER WAS UNAVAILABLE AND BECAUSE THE STATEMENTS WERE TESTIMONIAL AND OFFERED IN VIOLATION OF THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE. (Raised below.)
>
> POINT II
> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO DISMISS JUROR NO. TWO FOR COMMENTING OUT LOUD ON DEFENSE TACTICS IN THE JURY ROOM. THE COURT FURTHER ERRED WHEN IT DENIED THE DEFENSE MOTION FOR A MISTRIAL BASED ON THE JUROR'S COMMENT. (Raised below.)
>
> POINT III
> THE STATE FAILED ITS BURDEN OF PROVING ALL THE ELEMENTS OF RECEIVING STOLEN PROPERTY. THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE PURSUANT TO <u>RULE</u> 3:18-1. THE COURT FURTHER ERRED IN PERMITTING THE STATE TO AMEND COUNT TWO OF THE INDICTMENT REGARDING RECEIVING STOLEN PROPERTY. (Raised below.)
>
> POINT IV
> THE PROSECUTOR'S COMMENTS AND ACTIONS DURING THE COURSE OF THE TRIAL CONSTITUTED PROSECUTORIAL MISCONDUCT DEPRIVING THE DEFENDANT OF A FAIR TRIAL. THE COURT'S FAILURE TO ISSUE CURATIVE INSTRUCTIONS FURTHER AGGRAVATED THE SITUATION. (Partially raised below.)
>
> POINT V

THE TRIAL COURT'S RULINGS AND BEHAVIOR DURING THE COURSE OF THE TRIAL DEMONSTRATED THAT THE COURT DID NOT MAINTAIN AN IMPARTIAL DEMEANOR THEREBY DEPRIVING THE DEFENDANT OF A FAIR TRIAL. (Raised below.)

POINT VI
THE COURT IMPOSED AN EXCESSIVE SENTENCE WHICH DID NOT TAKE INTO CONSIDERATION ALL APPROPRIATE CODE SENTENCING GUIDELINES. THIS SENTENCE SHOCKS THE JUDICIAL CONSCIENCE.

Jeffery Richardson, Colby's brother, appeals from an amended February 27, 2015 judgment of conviction for the same criminal offenses charged in counts two, three, four, six, seven, and eight. In addition, he was found guilty of fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count ten). On appeal, Jeffery argues:

POINT I
THE TRIAL COURT ABUSED ITS DISCRETION BY SEVERELY LIMITING THE SUBSTANCE OF THE OPENING STATEMENT MADE BY [JEFFERY'S] COUNSEL AND THESE RULINGS UNDULY PREJUDICED [JEFFERY] BY INFERRING THAT COUNSEL WAS ACTING IN AN IMPROPER MANNER.

POINT II
THE TRIAL COURT ABUSED ITS DISCRETION IN NOT PERMITTING [JEFFERY'S] ATTORNEY TO CROSS-EXAMINE THE STATE'S KEY WITNESS IN VIOLATION OF [JEFFERY'S] CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES.

POINT III
THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [JEFFERY'S] MOTION TO DISMISS THE RECEIVING STOLEN GOODS CHARGE OF THE SECOND COUNT AT THE CLOSE OF THE STATE'S CASE.

POINT IV

4

[JEFFERY'S] CONVICTION SHOULD BE VACATED AND THIS COURT SHOULD ORDER A NEW TRIAL BASED UPON THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS THROUGHOUT [JEFFERY'S] TRIAL.

POINT V
THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING [JEFFERY] TO SUCH A DRACONIAN AND UNJUST SENTENCE BASED UPON THE RECORD AND, THEREFORE, [JEFFERY'S] SENTENCE SHOULD BE VACATED.

We have reviewed all arguments raised by each defendant, in light of the record and applicable law. We affirm.

I.

On July 21, 2011, at approximately 5:20 p.m., Newark Police received a 9-1-1 call from an unidentified woman, reporting armed men, wearing gloves, in a red vehicle in the area of 600 Irvine Turner Boulevard. Detective Jimmy Rios and Officer Steven Maresca responded to the scene in separate police vehicles. Detective Rios saw a red Ford Taurus with three occupants and noticed the driver was wearing gloves. After making a K-turn, he pulled his patrol car behind the Taurus, which immediately sped off.

After a car chase, involving the two police vehicles and the suspects, the occupants of the vehicle "bailed out," exiting the Taurus while it was still moving. The Taurus struck a parked car and a tree, as the occupants fled on foot. Detective Rios radioed dispatch, reported the fleeing suspects, and provided their

descriptions and the direction each fled.[2] He requested back-up and positioned his vehicle to establish a perimeter to apprehend the suspects.

Detective Rios saw the rear-seat passenger and began to pursue him on foot. He trapped the suspect in the rear yards of the 900 block of Belmont Terrace. He arrested the suspect, who was later identified as co-defendant Jeffery.

Back-up officers, Detective Kevin Wright and Patrolman Walter Melvin, arrived at the scene within two minutes and participated in the search for the other two suspects. Detective Wright spotted a black male "emerge from the side of one house and run across the street into an alleyway of another house." The officers pursued the man into an alleyway near Hawthorne Avenue and arrested him as he attempted to hide behind bushes. This suspect was identified by Detective Rios and Officer Maresca as the driver of the Taurus, was determined to be Jeffery's brother, Colby.

Examining the 1998 Taurus, police noted its ignition was damaged, and they found a .45 caliber handgun, a rifle, a high

---

[2] In his reply brief, Colby argues defendants' description provided by testifying police officers was taken from their reports prepared after defendants were in custody. The argument was not raised on appeal and will not be addressed. Rule 2:6-2; Drinker Biddle & Reath LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011).

capacity magazine, and a screwdriver.  Police also recovered gloves, bandanas, cellphones, and a cap at the scene.

At trial, Detective Antonio Badim, the State's ballistics and firearms expert, testified both guns were operable and their serial numbers were obliterated.  Robert Irizarry, the previous owner of the Taurus, also testified.  Five months earlier, in February 2011, he traded the Taurus for a different car with C & J Auto Sales.

Other witnesses for the State testifying during the nine-day trial included the dispatch officer, the 9-1-1 operator, and forensic scientists from the State DNA laboratory, who linked Colby to a bandana and Jeffery to a glove recovered at the scene. Also admitted were various documents including transcripts of the 9-1-1 call and radio dispatches, maps, photographs of the crime crash scene, the damaged Taurus, and its contents.

Co-defendants presented an expert forensic scientist, who challenged the "outdated" methods and misleading conclusion of a DNA match drawn by the State's DNA experts.  Additionally, each defendant testified on his own behalf.

Colby testified he worked as a driver for his brother's roadside assistance company, which responded to service calls for customers of companies such as AAA and All America.  On July 21, 2011, at approximately 3 p.m., Jeffery arrived in a company van

to take Colby to work. Colby was to start work at 5 p.m., when Jeffery's shift ended. Sometime after 4 p.m., the van overheated so Jeffery took it for repair at a local mechanic shop. While the two waited, they walked to a nearby neighborhood near Hawthorne Avenue because Colby wanted to buy marijuana.

At some point, Jeffery separated from Colby because he desired to purchase Percocet. After his transaction was completed, Colby emerged from an alleyway and saw police. He became nervous, as he just purchased marijuana, so he ran. A police officer, searching on foot, saw Colby hiding behind a bush and arrested him. Colby stated the officer who placed him in handcuffs hit him on the side of the head with his gun. Also he admitted he tossed the marijuana during the chase and lost his bandana. Colby denied he was driving a red Ford Taurus or that he possessed guns.

Jeffery's testimony mirrored his brother's, as he explained how he picked up Colby from East Orange to go to work in the roadside assistance business, and the van overheated. The two began walking, then separated to purchase drugs. Jeffery testified as he emerged from where he purchased the painkillers, and as he walked on the street, a police car pulled alongside of him. Believing the police watched the drug transaction, he turned and ran. He tossed the purchased Percocet during the foot chase and lost his work gloves. Jeffery hid from police for several minutes,

A-4021-14T2

but ultimately was cornered and arrested. Jeffery denied owning or using a Ford Taurus, or possessing weapons.

## II.

Co-defendants raise some identical challenges, many that are similar and others that are dissimilar. We will first consider the issues the two appeals have in common, then, address the remaining matters raised individually. In Section III, we examine the separate challenges advanced to the imposed sentences.

### A. Issues Raised by Both Defendants.

#### 1.

Co-defendants argue, in POINT III of their respective merits briefs, the State's evidence failed to sustain a conviction for receiving stolen property. Specifically, they assert there was no proof the red Taurus was stolen; therefore, a judgment of acquittal should have been granted at the end of the State's case on that charge. See R. 3:18-1.

When considering a defendant's motion for acquittal at the close of the State's evidence, the trial judge must determine whether "viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." State v.

Reyes, 50 N.J. 454, 459 (1967). In other words, viewing only the evidence of record at the time of the motion, State v. Moffa, 42 N.J. 258, 263 (1964), could a jury properly convict. State v. Spivey, 179 N.J. 229, 236 (2004).

Before considering the State's evidence, we review the charged offense.

> A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner. "Receiving" means acquiring possession, control or title, or lending on the security of the property.
>
> [N.J.S.A. 2C:20-7(a).]

Reduced to its elements, the State must prove knowledge, possession of the property, if the property is stolen, and the defendant knew or believed it was stolen at the time of receipt. See State v. Hodde, 181 N.J. 375, 384-85 (2004).

Co-defendants argue the State failed to prove the Taurus was actually stolen, highlighting the undisputed fact no one reported the car stolen. State v. Tindell, 417 N.J. Super. 530, 549-50 (App. Div. 2011) (holding the State's burden requires it establish the vehicle in the defendant's possession was stolen). Although the trial evidence contained no direct evidence proving the Taurus

was stolen, the circumstantial evidence was sufficient to allow the jury to reasonably conclude the Taurus was a stolen vehicle.

The State proved: the Taurus's former owner transferred the car to C & J Auto Sales five months prior to the incident; the car had a temporary tag in the rear window; C & J Auto Sales had ceased doing business; a screw driver was found on the front seat of the vehicle; the ignition was damaged; no car keys were found; Colby was observed driving the Taurus with Jeffery as its passenger; and when police attempted a traffic stop, the driver of the Taurus accelerated, in an attempt to flee. From these facts, the trial judge denied Colby's motion to dismiss, as joined by Jeffery, stating:

> [T]he testimony of both officers is that the ignition of that automobile was damaged. That there was a flathead screwdriver found on the front seat of that car. And again, certainly, from that observation, Mr. Colby Richardson certainly knew or had reason to believe that that automobile was in fact stolen. . . . [P]eople . . . usually don't go around starting their own automobiles . . . by a flathead screwdriver. Again, I refer to the testimony of Officers Rios and Maresca as to their observations of the driver of that car, condition of the car, et cetera, et cetera. And for those reasons, again, I find that the State has provided more than ample testimony upon which a reasonable jury could find Mr. Colby Richardson guilty of the charge of receiving stolen property.

The judge's factual analysis is solidly grounded in sufficient credible evidence found in the record, which properly correlated with the law to support his legal conclusion. "That the case may be a close one or that the trial court decided all evidence or inference conflicts in favor of one side has no special effect." State v. Johnson, 42 N.J. 146, 162 (1964). We have no basis to interfere with the denial of the jointly made acquittal motions.

Further, Colby argues the trial judge erred by permitting the State to amend the indictment charge of receiving stolen property, to include: "or believing that [the car] was probably stolen." Conceding Rule 3:7-4 allows the court to amend an indictment to "correct an error in form," Colby argues permitting the State's amendment "lowered the State's burden of proof" and "placed an additional burden on the defense," and asserts the rule states an amendment to an indictment must be denied if the defendant will be prejudiced. We are not persuaded.

The trial judge determined the State's request for amendment "merely adopts or conforms the citation of the offense to the statutory language contained in the law," and "does not charge any additional offense." Further, defendants articulated no prejudice. We agree. The indictment as originally issued provided defendants notice of the charge. We also reject the suggestion

the amendment altered the defense strategy, which attacked that the vehicle was stolen. The State's case on this issue was circumstantial and the amendment in no way prejudiced defendant's position the evidence was insufficient or changed the burden of proof. We find no error.

2.

Each defendant (Colby in POINT V and Jeffery in POINTS I and II) asserts the trial judge abused his discretion, depriving co-defendants of a fair trial, inasmuch as the judge's demeanor and conduct was not impartial and his "rulings and behavior" placed limitations on counsels' cross-examination. Colby alleges the trial judge was zealous in limiting defense counsel's cross-examination, and interposed, sua sponte, his own objections rather than ruling upon the State's objections. Jeffery also suggests the judge's bias "permeated the entire trial" and was prejudicial. He also suggests this precluded counsel from "presenting a very important portion of his intended opening statement."

> The accusation of prejudicial actions by a trial judge is properly reviewable by an appellate court considering the entire transcript. In reviewing the transcript our function is to ascertain the validity of the claim of prejudice, and we are not to reach a conclusion of harmless error because we may believe that the defendant in fact was guilty as charged.

[State v. Zwillman, 112 N.J. Super. 6, 20
(App. Div. 1970), certif. denied, 57 N.J. 603
(1971).]

The defense presented by both brothers was they were not present in the Taurus and Detective Rios falsely accused them. Colby argues his attempts to challenge the detective's credibility were thwarted. However, this assertion was unaccompanied by a specific reference to the record. Absent this, we are unable to assess the claim, which is therefore rejected.

Next, Colby refers to the judge's "overzealous" limitation of cross-examination, giving only record citations without a discussion of the substance of the claimed error. He argues the judge "specifically instructed defense counsel that he could not question on cross-examination an area covered by co-counsel," prevented examination on areas not raised on redirect, and repeatedly called counsel to sidebar to repeat the limiting instructions.

We first note the failure to pinpoint the judge's prejudicial conduct and explain how it adversely affected defendants' case, is improper. It is of little value for an appellant's brief to list transcript citations without articulating the specific challenge to what occurred at that point in the trial and omit an explanation of what counsel was prevented from presenting. Cf.

14                                                      A-4021-14T2

Sackman v. N.J. Mfrs. Ins. Co., 445 N.J. Super. 278, 298-99 (App. Div. 2016) (discussing minimum standards required by Rule 2:9-9).

We have read the transcript sections cited. It is clear the judge repeated admonishments to defense counsel to avoid repetitive questions when examining the officers. For example, Officer Rios's testimony started on September 10, 2014, and continued with cross-examination by Jeffery's counsel, beginning the afternoon of September 11. Counsel's cross-examination continued on the next trial date, several days later on September 16. When counsel began asking the same questions already asked on the prior trial date, the judge stated: "I think we covered this last week, counsel." Despite this subtle comment, counsel proceeded to retrace general testimony already established. The judge grew firm, stating: "We don't need to rehash testimony that's been given." As counsel continued to retrace similar substance already established by the witness, the judge requested a sidebar.

> THE COURT: If I give you instruction follow the instruction. Okay?
>
> [JEFFERY'S COUNSEL]: Judge, I have to disagree here.
>
> THE COURT: I don't care if you disagree or not, follow the instructions.
>
> [JEFFERY'S COUNSEL]: I never asked any questions —

THE COURT: Follow the instruction move onto something else.  Let's move on.

[COLBY'S COUNSEL]: Excuse me, Judge, so because he covers something (indiscernible).

THE COURT: You can't cover the same thing, yes.

[COLBY'S COUNSEL]: I can't cover in my cross the things he covered?

THE COURT: Exactly

[COLBY'S COUNSEL]: How does my client . . . get representation, then?

[JEFFERY'S COUNSEL]: Exactly.

[COLBY'S COUNSEL]: I should just fold then.
        . . . .

THE COURT: I just explained it to you. You want to argue?

[COLBY'S COUNSEL]: No --

THE COURT: There's no argument.  If he covers something like he did last week he's not permitted to cover it again, because if that happens this trial will last until January.  If he covers something, you cannot cover the same thing again.

[COLBY'S COUNSEL]: Even if he didn't make the point I want to make, and he missed something, I can't bring that up?

THE COURT: Then it's not the same thing.

"[A] trial judge has broad discretion in determining the proper limitations of cross-examination of a witness whose credibility is in issue." Zwillman, supra, 112 N.J. Super. at 17-

18. Further, N.J.R.E. 611(a) requires a trial judge to "exercise reasonable control over the mode and order of interrogating witnesses . . . so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Indeed, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness[,]" and in the judge's discretion, "inquiry into additional matters as if on direct examination." N.J.R.E. 611(b). It is important to allow wide latitude during cross-examination, which must not be unfairly cramped by the trial judge. This is especially true where the witness involved is a principal witness against the defendant. Zwillman, supra, 112 N.J. Super. at 18.

Having reviewed the transcript references, we cannot agree the judge abused his discretion by requiring Jeffery's counsel not repeat questions already posed. There is no argument made in the brief nor presented during the sidebar conferences showing an area of inquiry Colby's counsel was precluded from presenting. Unlike the facts in State v. Bass, 224 N.J. 285 (2016), where counsel was stopped from asking questions regarding the plea agreement of co-defendant, turned State's witness, id. at 307, here, counsel was

curtailed from engaging in repetitive examination to "avoid needless consumption of time[.]" N.J.R.E. 611(a).

We also reject the notion the judge's statements reflect bias. Although the judge's sidebar comments might be read to suggest impatience, we conclude his reaction was not unexpected, as counsel ignored suggestions then warnings to move to a new area of testimony. "[J]udges are not potted plants," In re State ex rel. A.D., 212 N.J. 200, 231 (2012), nor are they immune from common causes of frustration. Having reviewed the entirety of the record, we discern no basis which portrays judicial bias.

We also find no error sustaining the State's objections, which required narrowing questions posed on recross to topics covered in redirect. N.J.R.E. 611. Co-defendants admit the judge imposed similar requirements during each side's examination, refuting suggestions of bias. Accordingly, we reject as lacking merit the claim of error because the judge instructed the jury to disregard questions posed that elicited a sustained objection. We also cannot agree the judge's rulings "telegraphed" a "personal belief that he did not believe the defense." R. 2:11-3(e)(2).

Finally, we find unremarkable the judge's basis to sustain objections during Jeffery's counsel's opening, which attempted to portray Jeffery's good character. Contrary to the suggestion on appeal by Jeffery, opening argument is not without limitations.

A-4021-14T2

State v. Tilghman, 385 N.J. Super., 45, 56-57 (App. Div. 2006). "[A]n opening statement should set forth only a succinct statement of what a party proposes to prove. The jury, having been given an overview of the State's and defendant's positions, will understand the nature of the action and be able to follow the evidence more intelligently." Tilghman, supra, 385 N.J. Super. at 55 (alteration in original) (quoting State v. Stamberger, 209 N.J. Super. 579, 581 (Law. Div. 1985)). "Counsel is also cautioned that the '[p]roposed evidence should not be detailed,' and when evidence is addressed, it should appear as little more than a 'fairly indefinite' outline." Ibid. (quoting Passaic Valley Sewerage Comm'rs v. Geo M. Brewster & Son, Inc., 32 N.J. 595, 605 (1960)). Preventing what amounted to counsel's character testimony was proper, and the notion the judge "impermissibly prevented counsel from pursuing a chosen strategy" is specious.[3]

B. Jeffery's Arguments.

Jeffery separately urges reversal and the grant of a new trial based on cumulative error (POINT IV). However, our

---

[3] Jeffery also argues the judge's sidebar warning that continued disregard of instructions would result in sanctions displayed prejudice. Not so. The judge very clearly outlined the parameters he required counsel to abide. He also advised counsel may disagree and resolution of that disagreement is left to this court. We do not find the judge erred in outlining his expectations and demanding counsel meet them.

discussion of co-defendants' challenges reveals no error. See State v. Conway, 193 N.J. Super. 133, 174 (App. Div.) (finding cumulative error doctrine did not apply as the verdict was consistent with weight of evidence presented), certif. denied, 97 N.J. 650 (1984).

In his pro se reply brief, Jeffery also raises matters discussed in detail in Colby's merits brief, which are discussed below. These include the judge's determination not to dismiss juror two (see section C.2. below), and a claim the prosecutor improperly bolstered the credibility of witnesses (see section C.3. below). In part, this latter issue cites what he believes are factual inaccuracies uttered by Detective Rios, apparently challenging his credibility, a matter not raised in the merits brief, which therefore will not be considered. R. 2:6-2(a)(6).

C. Colby's Separate Challenges.

1.

Colby first challenges the admissibility of the 9-1-1 tape, arguing his rights of confrontation were infringed because the State never attempted to produce the caller. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"); N.J. Const. art. I, ¶ 10 ("In all criminal prosecutions

the accused shall have the right . . . to be confronted with the witnesses against him[.]").

Prior to trial, the State moved to admit the audio tape of the 9-1-1 call, arguing it provided non-testimonial information to police for the purposes of receiving assistance in an emergency. The caller described a man standing outside a car putting on gloves, with a gun in his hand and a gun in the vehicle. The caller then recounts the vehicle driving away and when asked, responded with a description of the Taurus and noted its temporary tags.

Jeffery filed opposition to the State's motion. He argued any statements that followed the statement the vehicle was driving away represented past events, not events as they unfolded. Thus, the testimonial evidence must be excluded because the witness was not made available for cross-examination. Colby orally joined in this position and was permitted to argue. The trial judge granted the State's motion. He concluded the call was non-testimonial, and, although hearsay, provided the caller's present sense impression and represented an excited utterance.

We review evidentiary rulings to determine whether the trial judge abused his discretion. State v. Ates, 426 N.J. Super. 521, 537 (App. Div. 2012), aff'd, 217 N.J. 253 (2014), cert. denied, __ U.S. __, 135 S. Ct. 377, 190 L. Ed. 2d 254 (2014). The State

21

bears the burden to prove admissibility. <u>State v. Basil</u>, 202 <u>N.J.</u> 570, 596 (2010).

Under both our federal and state constitutions, "[a] criminal defendant has the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.'" <u>State v. Garron</u>, 177 <u>N.J.</u> 147, 168-69 (2003) (quoting <u>U.S. Const.</u> amend. VI; <u>N.J. Const.</u> art. I, ¶ 10), <u>cert. denied</u>, 540 <u>U.S.</u> 1160, 124 <u>S. Ct.</u> 1169, 157 <u>L. Ed.</u> 2d 1204 (2004). "[T]he Confrontation Clause of the United States Constitution bars the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" <u>State v. Slaughter</u>, 219 <u>N.J.</u> 104, 116-17 (2014) (quoting <u>Crawford v. Washington</u>, 541 <u>U.S.</u> 36, 53-54, 124 <u>S. Ct.</u> 1354, 1365, 158 <u>L. Ed.</u> 2d 177, 194 (2004)).

> An out-of-court testimonial statement is the equivalent of "bear[ing] testimony" against an accused. <u>Crawford</u>, <u>supra</u>, 541 <u>U.S.</u> at 51, 124 <u>S. Ct.</u> at 1364, 158 <u>L. Ed.</u> 2d at 192-93 (citation and internal quotation marks omitted). The Court made clear that the ultimate goal of the Confrontation Clause is to test the reliability of testimonial evidence in "the crucible of cross-examination." <u>Id.</u> at 61, 124 <u>S. Ct.</u> at 1370, 158 <u>L. Ed.</u> 2d at 199; <u>see also</u> [<u>In re</u>] <u>J.A.</u>, [] 195 <u>N.J.</u> [324,] 342-43 [(2008)]. The Court reasoned that the Clause "reflects a judgment, not only about the desirability of reliable evidence . . ., but about how reliability can

22

> best be determined." <u>Crawford</u>, <u>supra</u>, 541 <u>U.S.</u> at 61, 124 <u>S. Ct.</u> at 1370, 158 <u>L. Ed.</u> 2d at 199.
>
> [<u>Basil</u>, <u>supra</u>, 202 <u>N.J.</u> at 591 (alteration in original).]

Importantly, this constitutional guarantee only grants a criminal defendant "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>State v. Williams</u>, 184 <u>N.J.</u> 432, 454 (2005) (citing <u>Delaware v. Fensterer</u>, 474 <u>U.S.</u> 15, 20, 106 <u>S. Ct.</u> 292, 294, 88 <u>L. Ed.</u> 2d 15, 19 (1985)). Therefore, the right to confront witnesses "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process, such as established rules of evidence and procedure designed to ensure the fairness and reliability of criminal trials." <u>Garron</u>, <u>supra</u>, 177 <u>N.J.</u> at 169 (quotations omitted).

The crucial issue is whether the statement sought to be admitted is "testimonial," as "[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." <u>Davis v. Washington</u>, 547 <u>U.S.</u> 813, 821, 126 <u>S. Ct.</u> 2266, 2273, 165 <u>L. Ed.</u> 2d 224, 237 (2006). Non-testimonial statements are "exempted . . . from Confrontation Clause scrutiny," <u>Crawford</u>, <u>supra</u>, 541 <u>U.S.</u> at 68, 124 <u>S. Ct.</u> at

1374, 158 L. Ed. 2d at 203, but remain limited by the rules of evidence, particularity "traditional limitations upon hearsay evidence," Davis, supra, 547 U.S. at 821, 126 S. Ct. at 2273, 165 L. Ed. 2d at 237.

When examining whether a statement is testimonial, New Jersey's "confrontation jurisprudence has followed the federal approach." State v. Roach, 219 N.J. 58, 74 (2014).

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
>
> [Davis, supra, 547 U.S. at 822, 126 S. Ct. at 2273-274, 165 L. Ed. 2d at 237.]

More specifically, "interrogations by law enforcement officers fall squarely within [the] class of testimonial evidence[,]" Crawford, supra, 541 U.S. at 53, 124 S. Ct. at 1365, 158 L. Ed. 2d at 194; however, the United States Supreme Court has concluded 9-1-1 calls, although statements to police or their agents, are generally "not designed primarily to 'establis[h] or prov[e]' some past fact, but intended to describe current circumstances requiring police assistance." Davis, supra, 547

24

U.S. at 827, 126 S. Ct. 2276, 165 L. Ed. 2d 240 (alterations in original) (quoting Crawford, supra, 541 U.S. at 53, 124 S. Ct. 1354, 158 L. Ed. 2d 177).  The Court in Davis concluded the 911 call was not testimonial, and the information was not presented to evade confrontation.  Id. at 840, 126 S. Ct. at 2284, 165 L. Ed. 2d 248.

As in Davis, here, the 9-1-1 caller reported events as they actually happened; she was not recounting past events.  The facts were necessary to "resolve the present emergency."  Davis, supra, 547 U.S. at 827, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240.  Also, the call was introduced to show why and how police action was initiated.  The statements were not a "weaker substitute for live testimony."  United States v. Inadi, 475 U.S. 387, 394, 106 S. Ct. 1121, 1126, 89 L. Ed. 2d 390, 398 (1986).

Defendant also argues the vehicle's description was a testimonial statement.  Davis also rejected a similar argument, stating, "even the operator's effort to establish the identity of the assailant, so that the dispatch officers might know whether they would be encountering a violent felon" was non-testimonial. Davis, supra, 547 U.S. at 827, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240 (citing Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 186, 124 S. Ct. 2451, 2457, 159 L. Ed. 2d 292, 302 (2004)).

25

Accordingly, guided by Davis, we conclude the statements at issue were nontestimonial and not governed by the Confrontation Clause. We therefore reject Colby's insistence the tape's admission was dependent on the State's efforts to locate the caller.

Here, as mentioned by the trial judge, "there is no indication that the statement is being offered by the State for the truth of the contents contained in that statement," but rather to explain why the police went to the area in question. We conclude the judge properly admitted the tape, citing N.J.R.E. 803(c)(1).[4] We defer to the trial judge's findings the caller "made statements while the declarant was perceiving the events . . . to the 9-1-1 operator."[5] "Trial judges are entrusted with broad discretion in making evidence rulings[,]" State v. Muhammad, 359 N.J. Super. 361, 388 (App. Div.) certif. denied, 178 N.J. 36 (2003), and since an appellate court "should overrule a trial court's evidentiary ruling only where a clear error of judgment is established[,]" we determine no compelling reason is presented by any of these

---

[4]    N.J.R.E. 803(c)(1) defines a present sense impression as: "A statement of observation, description or explanation of an event or condition made while or immediately after the declarant was perceiving the event or condition and without opportunity to deliberate or fabricate."

[5]    The transcript of the tape has not been included in the record by either co-defendant, or the State.

arguments to disturb the trial judge's ruling.  State v. Loftin, 146 N.J. 295, 357 (1996).

### 2.

Colby argues the judge erred by denying his motion for a mistrial when he learned of a juror's comment.  Specifically, when the defense requested to move a television away from the jury to aid defendants' view, juror two commented, "[t]he defendants didn't look at the screen so I don't know why they had to move the screen away from us[,]" as she re-entered the jury room.  Knowledge of the statement surfaced when juror eleven mentioned he overheard juror two, during his voir dire regarding a different allegation of trial discussions in the jury room.  Juror two had already been examined and never mentioned her comment about the television.  When she was re-questioned, she advised she spoke aloud, but was not talking to anyone but herself.

We reject Colby's contention attempting to infer bias by juror two.  We conclude juror two's comment, even if overheard by another, suggested neither impartiality nor bias and lacked the capacity to prejudice defendant's right to a fair trial.  Further, the trial judge acted properly to immediately follow up when he learned of the comment.  He considered the testimony of juror two and juror eleven, and satisfied himself the statement complained

about an inconvenience and did not discuss the trial or expose other jurors to extraneous information that might impact deliberations. The judge also rejected Colby's suggestion juror two was rolling her eyes and gesturing. Finally, he determined juror two could remain fair and impartial and evaluate the evidence.

> The trial court is in the best position to determine whether the jury has been tainted. That determination requires the trial court to consider the gravity of the extraneous information in relation to the case, the demeanor and credibility of the juror or jurors who were exposed to the extraneous information, and the overall impact of the matter on the fairness of the proceedings.
>
> [State v. R.D., 169 N.J. 551, 559 (2001).]

When the record is reviewed in total, it is clear the trial judge understood his obligations "to safeguard the rights of the accused and vindicate societal interests in the fair and efficient administration of the criminal justice system." State v. Bey, 112 N.J. 45 89-90 (1988). The judge properly reacted to possible juror discussions, and took appropriate action.[6] There is no abuse of discretion.

---

[6] Juror five was removed after voir dire when he asked a court officer to speak to the judge and asked the jurors whether a document was entered into evidence. This comment directly went to the nature of the trial and violated the juror's oath not to discuss the trial until deliberations.

Next, Colby cites six comments by the prosecutor alleged to rise to prosecutorial misconduct, which were not met with a necessary curative instruction. He seeks reversal claiming these missteps deprived him of a fair trial.

The guarantee of a fair trial before an impartial jury, see U.S. Const. amends. VI, XIV; N.J. Const. art. 1, ¶ 10, "includes the right to have the jury decide the case based solely on the evidence presented at trial, free from the taint of outside influences and extraneous matters." R.D., supra, 169 N.J. 551, 557 (citing Bey, supra, 112 N.J. at 75). Indeed, "securing and preservation of an impartial jury goes to the very essence of a fair trial." Bey, supra, 112 N.J. at 75 (quoting State v. Williams, 93 N.J. 39, 60 (1983)).

In presenting a case to a jury, the State is "not to obtain convictions but to see that justice is done." State v. Ramseur, 106 N.J. 123, 320 (1987); see also Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314, 1321 (1935) ("[A prosecutor] may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just

one."). The prosecutor may not impassion a jury or incite a verdict based on emotions, but may only comment on the evidence presented. State v. Black, 380 N.J. Super. 581, 594-95 (App. Div. 2005), certif. denied, 186 N.J. 244 (2006).

In pursuing this role, a prosecutor has great leeway in his or her opening comments, and he or she is allowed to be forceful. See State v. Wakefield, 190 N.J. 397, 443 (2007) (quoting State v. DiFrisco, 137 N.J. 434, 474 (1994)), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008). During an opening statement, a prosecutor may reference facts she or "he intends in good faith to prove by competent evidence." Id. at 442 (quoting State v. Hipplewith, 33 N.J. 300, 309 (1960)).

A similar standard guides the State's presentation in summation.

> Prosecutors are expected to make a vigorous and forceful closing argument to the jury, and are afforded considerable leeway in that endeavor. Nevertheless, there is a fine line that separates forceful from impermissible closing argument. Thus, a prosecutor must refrain from improper methods that result in wrongful conviction, and is obligated to use legitimate means to bring about a just conviction.
>
> [State v. Ingram, 196 N.J. 23, 43 (2006) (quoting State v. Jenewicz, 193 N.J. 440, 471 (2008)).]

"[N]ot every suspected deviation from perfection on the part of a prosecutor will justify a reversal of a conviction." State v. Bozeyowski, 77 N.J. Super. 49, 63 (App. Div. 1962) (quoting State v. Bucanis, 26 N.J. 45, 56, cert. denied, 357 U.S. 910, 78 S. Ct. 1157, 2 L. Ed. 2d 1160 (1958)). "[The] infraction must be clear and unmistakable and must substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." Ibid. Accordingly, in our review of a prosecutor's statements, we evaluate the alleged improper comments to determine "the severity of [any] misconduct and its prejudicial effect on the defendant's right to a fair trial." Wakefield, supra, 190 N.J. at 437.

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial." Ibid. Claimed errors are not considered in isolation, but viewed in the context of the entire trial. State v. Negron, 355 N.J. Super. 556, 576-77 (App. Div. 2002). To warrant reversal, the remarks must be "clearly and unmistakably improper" and "substantially prejudiced the defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." State v. Papasavvas, 163 N.J. 565, 625 (2000) (quoting Wakefield, supra, 190 N.J. at 576-77); see also Ingram, supra, 196 N.J. at 43.

First, Colby contends the following statement during the opening statements violated his Fifth Amendment right to remain silent by drawing the jury's immediate attention to whether he would testify on his own behalf:

> I ask you to scrutinize all the witnesses. Consider all their statements. Consider their credibility. And, even though it's true that the defendant[]s have no burden to testify, no burden to speak, no burden to even appear in court for their trial, if they do decide to speak, if they do decide to say anything or testify[,] I ask you to give them equal amount of scrutiny as you would all of the witnesses for the State.

There was no objection requiring we find plain error, State v. Hightower, 120 N.J. 378, 410 (1990), that is an error which was "clearly capable of producing an unjust result." R. 2:10-2. "The possibility of an unjust result must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Williams, 168 N.J. 323, 336 (2001) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Notably, "a failure to object, as here, indicates that in the atmosphere of the trial the defense did not believe that the prosecutor's remarks were prejudicial." State v. Wilson, 57 N.J. 39, 51 (1970). The failure of trial counsel to object to the prosecutor's remarks is an "ordinarily controlling

32                                                          A-4021-14T2

consideration[]." Id. at 50. See also State v. Frost, 158 N.J. 76, 83 (1999) (holding generally, "remarks will not be deemed prejudicial[,]" if no objection was made at trial). Moreover, failure to object "deprives the court of an opportunity to take curative action." Id.

In light of the failure to object and the lack of articulated prejudice, we reject this assertion. The prosecutor's statement neither misstated the law nor impugned the defendant's right to remain silent. Her comments were carefully crafted to merely ask the jury to focus on the credibility of any testifying witness.

Second, Colby alleges the prosecutor impermissibly bolstered the credibility of Irizarry on redirect. After stating he was sentenced to probation for a prior criminal conviction, Irizarry was asked on cross-examination to confirm the crime charged occurred eighteen months following his imposed two-year probationary sentence, noting he was on probation in July 2011. The witness stated, "I think I wasn't on probation at that time" and stated he was "dismissed early." After redirect and recross on different issues, the prosecutor's redirect asked whether Irizarry was released early from probation "for good behavior." Colby uttered a delayed objection, arguing the question was not within the scope of defense counsel's cross-examination. The trial judge overruled the objection, finding no error.

We determine any error was harmless. The question related to the issues raised on cross-examination and the objection was voiced after the fact. Moreover, the witness's testimony was not critical, as it merely established he previously owned the Taurus, which he transferred to a used car dealer.

The third and fourth items focus on the cross-examination of Colby. He claims the prosecutor's questions essentially asked why he did not tell police his van was being repaired at a local mechanic shop to explain why he was found in the area when arrested. The exact comment by the prosecutor was, "And you knew everyone in the mechanic shop. And you, now give us the name and address[,] right?" Colby answered and prior to the next question, his counsel objected. At sidebar the judge asked the prosecutor whether she planned to ask why the information was not revealed earlier. She said no and when pressed said, "there is no plan, actually. I'm just asking questions." Defense counsel objected, arguing the question implied Colby had a duty to provide the police information about the mechanic shop. The judge firmly instructed the prosecutor avoid any suggestion defendant was obliged to provide evidence. Then, the judge told the jury to disregard the prosecutor's last question.

The prosecutor's next question was: "You have no duty to speak to the police, as you know, and nor did you correct?" This

triggered an immediate objection. At sidebar, Colby insisted on a curative instruction. The judge sustained the objection and directed the jury to disregard the question.

Given the judge's firm, clear jury direction to disregard the questions, prior to Colby's response, which he issued immediately, without delay, State v. Vallejo, 198 N.J. 122, 134 (2009) (citing State v. Winter, 96 N.J. 640, 649 (1984)), we conclude the prosecutor's error was harmless. Additionally, the judge's general charge informed the jury on the State's burden of proof, a defendant's right not to provide any evidence, and reminded them counsel's statements were not evidence. "[T]he most basic assumption [is] that a jury follows the charges given to it by the court." State v. Wilder, 193 N.J. 398, 416 (2008). Reversal is not warranted.

Fifth, during cross-examination of Jeffery, the prosecutor asked him if he disputed Officer Rios's testimony regarding how long it took to apprehend him. Defense counsel objected. The judge noted the question was improper, so the prosecutor moved on. There is no error. R. 2:11-3(e)(2).

Finally, Colby attacks comments during the State's summation; discussing the time from the Taurus crash to co-defendants' arrest, the prosecutor stated: "And [co-defendants'] testimony, ladies and gentleman, is narrowly tailored to that little window because they

have discovery. They have everything that we have." In context, the prosecutor was noting co-defendants' testimony regarded a period of time when police were unable to directly observe the pursued suspects. No objections were made. Reviewing Colby's contentions the comments improperly impugn a defendant's right to discovery, we conclude there was no error, let alone plain error.

4.

In his reply brief, Colby argues defendants' descriptions provided by testifying police officers were taken from their reports prepared after defendants were in custody. The argument was not raised on appeal and will not be addressed. R. 2:6-2.

III.

Each defendant was separately sentenced. Each argues the sentence imposed represents an abuse of judicial discretion, was excessive and shocks the judicial conscience. We disagree.

Our "review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010) (citing State v. Jarbath, 114 N.J. 394, 401 (1989)). "In conducting the review of any sentence, appellate courts always consider whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether 'the factfinder [has] appl[ied] correct legal principles in exercising its discretion.'" Ibid.

(alterations in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)). The traditional articulation of this standard limits our review to situations where application of the facts to law has resulted in a clear error of judgment leading to sentences that "shock the judicial conscience." Roth, supra, 95 N.J. at 364-65. If the sentencing court has not demonstrated a clear error of judgment or the sentence does not shock the judicial conscience, appellate courts are not permitted to substitute their judgment for that of the trial judge. Ibid.

Colby and Jeffery were subject to consecutive sentences. The decision to impose concurrent or consecutive sentences is subject to guidelines identified in State v. Yarbough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986), which are as follows:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
> > (a) the crimes and their objectives were predominately independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .[7]

[Id. at 643-44.]

"[T]he Yarbough guidelines are just that--guidelines. They were intended to promote uniformity in sentencing while retaining a fair degree of discretion in the sentencing courts." State v. Carey, 168 N.J. 413, 427 (2001). "It follows that a sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences." Id. at 428

---

[7] What was guideline six was superseded by a 1993 amendment to N.J.S.A. 2C:44-5(a), which provides there "shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses."

(concluding the trial court properly imposed consecutive sentences even though four of <u>Yarbough</u>'s five factors militated in favor of concurrent sentences) (<u>see also</u> <u>State v. Perry</u>, 124 <u>N.J.</u> 128, 177 (1991)).

"When a trial court is faced with the decision whether to impose consecutive or concurrent sentences, the court must determine whether the <u>Yarbough</u> factor under consideration "'renders the collective group of offenses distinctively worse than the group of offenses would be were that circumstance not present.'" <u>Carey</u>, <u>supra</u>, 168 <u>N.J.</u> at 428 (quoting <u>People v. Leung</u>, 7 <u>Cal. Rptr.</u> 2d 290, 303 (1992)).

## A.

Colby maintains his sentence was excessive, disproportionate and arbitrary. He cites errors by the trial judge when evaluating the aggravating and mitigating factors and by imposing consecutive sentences.

The judge imposed an aggregate seventeen-year prison term, as follows: <u>count two</u> - third-degree receiving stolen property, an automobile, four years; <u>count three</u> - second-degree unlawful possession of a .45 caliber handgun, six years, subject to a three-year period of parole ineligibility, to run consecutively to the sentence in count two; <u>count four</u> - fourth-degree possession of a defaced firearm, eighteen months with an eighteen-month period of

parole ineligibility, to run concurrent to the sentence imposed on count two; <u>count six</u> - second-degree possession of an assault firearm, subject to the Graves Act, <u>N.J.S.A.</u> 2C:43-6, six years with three-and-one-half years parole ineligibility, to run consecutive to counts two and three; <u>count seven</u> - fourth-degree unlawful possession of hollow point bullets, eighteen months to run concurrent to counts two, three, four, and six; <u>count eight</u> - fourth-degree illegal possession of a large capacity ammunition magazine, eighteen months concurrent to counts two, three, four, six, and seven; <u>count nine</u> — fourth-degree resisting arrest, eighteen months concurrent to counts two, three, four, six, seven and eight.

Colby was also convicted of the disorderly persons offense of possession of burglary tools and sentenced to 180 days incarceration to be served concurrently and acquitted of the offense of obstruction. Finally, the judge adjudicated the motor vehicle summonses issued, finding Colby guilty of reckless driving, leaving the scene of an accident, and not guilty of failure to wear a seatbelt. The judge imposed applicable fines and penalties for these, as well as the criminal convictions and suspended his driving privileges for six months.

Here, the trial judge evaluated the applicable factors qualitatively not quantitatively, <u>Carey</u>, <u>supra</u>, 168 <u>N.J.</u> at 427,

and entered specific findings. He noted the there are no "free crimes" and these convictions were for "distinctly different" crimes, "independent of each other," which had separate objectives. Violence and the "potential to cause some very serious harm and/or damage" was present, as defendant possessed more than one firearm, one of which was an assault rifle, loaded with hollow point bullets. The guns were "loaded and ready to go." The conduct in the car chase had the potential to endanger the lives, and did damage the property, of others. Further, the judge found the crimes were committed at different times and places: the automobile was stolen and the weapons and ammunition were obtained separately;[8] the handgun was defaced making it untraceable and not possible to discern when it was obtained, and whether Colby defaced it.

The judge concluded the "failure to impose consecutive sentences . . . would be a failure to impose adequate consequences" for Colby's criminal acts and would not provide "adequate protection for the public." He ordered consecutive sentences for counts two, three and six was "appropriate to afford . . . protection to the general public."

---

[8] The judge stated the assault rifle was registered to an individual in the western United States.

Next, the judge stated his findings regarding applicable aggravating and mitigating factors. N.J.S.A. 2C:44-1(a), (b). He applied aggravating factor three, N.J.S.A. 2C:44-1(a)(3), the risk of re-offense, and nine, N.J.S.A. 2C:44-1(a)(9), the need for deterrence. In doing so, the trial judge stated Colby, who was twenty-two when the offenses occurred, had several juvenile adjudications, a disorderly persons conviction, non-indictable adult convictions, and four pending indictable charges. He also weighed the seriousness of the instant seven convictions, all of which showed Colby was likely to reoffend. Also, the need for specific deterrence and general deterrence from possession and use of assault and illegal weapons weighed heavily.

The judge rejected Colby's suggestion for application of mitigating factors. Without question, possession of a loaded handgun and an assault rifle had the potential to cause, and was intended to threaten, "some very grave and serious harm to a lot of different people." Further, the car chase, which was "reckless and irresponsible," endangered the occupants in the area, pedestrians, other motorists, police, Colby, and the other occupants of his vehicle. In rejecting mitigating factor seven, the judge acknowledged Colby had no adult criminal convictions, but had four juvenile adjudications and a number of arrests and disorderly persons convictions.

42

Next, the judge rejected the suggestion the conduct was unlikely to reoccur. The evidence presented at trial along with his criminal history were found to strongly suggest prior minor brushes with the law failed to deter Colby from engaging in more serious offenses, reflecting the likelihood of reoccurrence of criminal conduct. For these same reasons, the judge also rejected as unsupported Colby's claimed positive character as demonstrating he was unlikely to commit another offense and would respond affirmatively to probation. As to suggested hardship to his family and newborn child, the record showed "a scattered history of employment," belying the assertion he is the sole source of their financial support. The judge concluded the aggravating factors preponderate over the non-existing mitigating factors, making a custodial sentence appropriate.

On appeal, Colby argues the two aggravating factors did not apply. We disagree. State v. Pindale, 249 N.J. Super. 266, 288 (App. Div. 1991) (holding juvenile records can be considered when considering the risk of re-offense); Jarbath, supra, 114 N.J. at 405 (holding a sentence has both a general and personal specific deterrent effect).

Colby also believes mitigating factors eight, nine, and eleven should have applied and the judge's factual findings were insufficient to reject their application. We disagree and defer

to the articulated factual findings addressing the arguments advanced.

We note, and the State concedes, the judgment of conviction incorrectly included aggravating factor eleven. This was not mentioned by the judge and its inclusion was an obvious error.

Following our review, we do not agree the sentence shocks the conscience; we will not interfere. We do remand to correct the judgment of conviction to remove aggravating factor eleven.

B.

Jeffery also challenges, as "draconian and unjust," the aggregate sentence imposed of thirty-one years and six months of incarceration, with twelve years and six months of parole ineligibility. Jeffery argues the imposition of consecutive sentences and the misapplication of the aggravating and mitigating factors in fixing the length of his sentence was erroneous, maintaining "the unique facts of the case and [his] personal background" require the sentence be vacated in favor of resentencing. He specifically states mitigating factor eleven was improperly rejected as the judge found he was married, the primary caregiver along with his wife of three young children, and suffers from substance abuse.

The sentencing judge first considered the State's motion for imposition of a discretionary term, N.J.S.A. 2C:44-3(a), which he

concluded was appropriate and should be granted. He next reviewed applicable aggravating and mitigating factors. The judge noted defendant had ten convictions, five of which were for indictable offenses; he served jail sentences, and has four pending indictable charges. Accordingly, the judge found nothing would "detract from the reasonable likelihood [Jeffery] will offend again."

The judge applied aggravating factor six, noting the extent of his prior record and that Jeffery "expressed absolutely no remorse." His previous arrests, convictions, and punishments did not deter him from committing additional offenses, and considering the current offenses, application of both general and specific deterrence, factor nine, was required.

The judge also imposed aggravating factor thirteen, N.J.S.A. 2C:44-1(a)(13), providing "defendant, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a stolen motor vehicle[.]"

Regarding the rejection of mitigating factor eleven, the judge noted one of Jeffery's children was ill and he may well provide support for his family, however, based on his criminal history (including possession of and distribution of controlled dangerous substances), incarcerations, and limited past employment, any support appeared to result from criminal activity,

45

which negated application. Looking at his prior arrests and convictions, the judge rejected Jeffery's claim he was now changed in the short period from arrest to sentencing.

In imposing consecutive sentences on counts two, three, four, and six, the judge rejected the argument these crimes constituted a single event. He found the identified crimes were "separate and apart." Noting there are no "free crimes," the judge found it would be "grossly unjust" were he to ignore the necessity to "provide for the safety of the general public" and imposed a consequence for the distinct offenses committed. The offenses of receipt of a stolen automobile, unlawful possession of a handgun, possession of a defaced firearm, and possession of an assault rifle occurred at separate times, and were not a single transaction, but each offense had distinct, independent objectives and involved separate threats of violence.

The sentences imposed were as follows: count two - third-degree receiving stolen property, an automobile, five years; count three - second-degree unlawful possession of a .45 caliber handgun, fifteen years, with a seven and one-half year period of parole ineligibility, to run consecutively to the sentence in count two, subject to the Graves Act, N.J.S.A. 2C:43-6; count four - fourth-degree possession of a defaced firearm, eighteen months with an eighteen-month period of parole ineligibility pursuant to the

Graves Act, to run consecutive to sentences imposed on counts two and three; count six - second-degree possession of an assault firearm, subject to the Graves Act, ten years with a five-year period of parole ineligibility, to run consecutive to counts two and three; count seven - fourth-degree unlawful possession of hollow point bullets, eighteen months to run concurrent to counts two, three, four, and six; count eight - fourth-degree illegal possession of a large capacity ammunition magazine, eighteen months concurrent to counts two, three, four, six, and seven; count ten - fourth-degree resisting arrest, eighteen months consecutive to counts two, three, four, six, seven and eight.

The judge acquitted defendant of the disorderly persons offense of obstruction and possession of burglary tools. Applicable mandatory fines and penalties were imposed.

## IV.

In summary, we have thoroughly reviewed the record and considered the challenges raised by each defendant to his respective conviction and sentence. We find no error warranting a new trial. We have rejected as unfounded many of the claims advanced and although identifying some errors, we conclude they were harmless.

> Trials, particularly criminal trials, are not
> tidy things. The proper and rational standard
> is not perfection; as devised and administered

A-4021-14T2

by imperfect humans, no trial can ever be entirely free of even the smallest defect. Our goal, nonetheless, must always be fairness. "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619, 73 S. Ct. 481, 97 L. Ed. 593 (1953).

[State v. R.B., 183 N.J. 308, 333-34 (2005).]

This standard was more than met and defendants' convictions will not be altered; nor will the imposed sentences be set aside, save for the correction we noted to be made to Colby's judgment of conviction. The factual findings by the trial judge were supported by the record, and he properly applied the law.

Affirmed on both appeals. Remanded for a technical correction of the judgment of conviction on A-4021-14.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION